Steven G. Sklaver (237612)
ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Seth Ard (*pro hac vice* to be filed)
sard@susmangodfrey.com
Ryan Kirkpatrick (243824)
rkirkpatrick@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCIO DIVISION**

| | |
|---|---|
| JOE S. YEARBY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN NATIONAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:20-cv-09222<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Joe S. Yearby ("Plaintiff"), on behalf of himself and all others similarly situated, for his Complaint against defendant American National Insurance Company ("ANICO"), states as follows:

**NATURE OF THE ACTION**

1. This is a class action brought on behalf of Plaintiff and similarly situated owners of life insurance policies issued by ANICO in the state of California. Plaintiff seeks to represent a class of ANICO policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges, deducted from their account values on a monthly basis that are not, as the policies require, determined from time to time by ANICO based on its expectations as to future mortality experience.

2. The policies at issue in this case are universal life policies, including variable universal life policies, issued in California on standardized form contracts by ANICO. Universal life ("UL") policies combine death benefits with a savings or investment component, often known as the "account value," "policy value," or "cash value." A key feature of such policies is the "unbundling" or "transparency" of the various charges and credits. This means that the monthly deductions are broken down into an array of discrete charges and credits: the COI charges, other contractually-specified charges, and crediting rates. The Dictionary of Insurance Terms describes unbundled universal life insurance as "coverage in which the investment features, mortality element and cost factors of a life insurance policy are separated, permitting each part to be independently analyzed." The COI charge is the policy's unbundled insurance component and is used to cover the insurer's mortality risk. It is also referred to by both ANICO and the broader industry as the "mortality charge" or the "pure cost of protection." The savings component, as discussed in more detail herein, allows policyholders to use their policies as tax-advantaged savings vehicles and earn interest on the policy value.

3. Cost of insurance rates are not fixed. Because COI charges are intended to compensate the insurer for mortality risk (i.e., the expected probability that the insured will die in a particular policy year), they are determined in the future by the insurer based on its expectations as to future mortality experience. ANICO is required to periodically review the COI rates to

confirm that they correctly reflect the insurer's current mortality expectations. ANICO acknowledges that it reviews its mortality continuously and conducts these COI rate redeterminations periodically, using its current mortality experience. *See* ANICO's 2019 Annual Report to National Association of Insurance Commissioners, Exhibit 5 Interrogatories, Supplemental Responses to Interrogatory 3 (Header:  Nonguaranteed Element Determination Process – Life Insurance. "[C]ost of insurance rates . . . are determined at issue for all durations based on experience factors in effect at the time the policy issued.  Unless there is a change in the expected experience factors, there is no need to change any of the nonguaranteed policy elements. The process of redetermination of nonguaranteed policy elements begins with a **review** of company experience.  If there is a material change in expected experience, **a redetermination of the rates based on the new experience factors is done** . . .). ANICO recently conducted these new mortality reviews, and concluded that its mortality expectations had improved.  *See, e.g.,* ANICO's 10-K (2019) ("Life insurance and annuity are mainstay segments . . . We believe that the combination of predictable and **decreasing mortality rates** . . . suggest a viable and profitable future for these lines of business."). Yet ANICO did not reduce COI rates, as it was required to do under the plain terms of the policies.

4. ANICO also made annual certifications to the National Association of Insurance Regulators and various state regulators concerning whether its "anticipated experience" for mortality underlying its COI charges differs from its "current experience" of mortality.  This necessarily requires an analysis comparing current mortality rates to emerging experience. ANICO's annual financial reporting, including its predictions of future cash flows, also incorporates updated expectations of future mortality experience.

5. If a review shows that mortality rates are projected to decline, the monthly COI rates that ANICO used to calculate the monthly COI charges must be reduced. This principle is inherent in the meaning of "cost of insurance," and is further embodied in the plain language of the policies at issue in this case, each of which expressly states that "*Monthly* Cost of Insurance Rates will be determined by the Company from *time to time* based on the Company's expectations as to future mortality experience"—and nothing else.  ANICO imposes other charges

through which it recoups administrative costs and earns a profit, such as a premium expense charge of each premium collected and an administrative expense charge.

6. But Plaintiff, along with numerous other ANICO policyholders, have been subjected to unlawful monthly calculations and deductions from their account value and forced to pay inflated COI charges that are not allowed by the plain language of their insurance contracts.

7. Despite its contractual commitment that monthly COI rates will be determined "based on the Company's expectations as to future mortality experience," and despite the fact ANICO has recently enjoyed significantly improved mortality experience and expectations, monthly COI rates have not been determined based on ANICO's improving mortality expectations, and the results of ANICO's new mortality reviews are being ignored to the detriment to the members of the Class.

8. It is now well-documented that nationwide mortality expectations have *improved* significantly. The Society of Actuaries and the American Academy of Actuaries periodically publish mortality tables using information collected from America's largest insurers. Those tables show that mortality rates have improved at a rate of roughly 1% per year.

9. In October 2015, the American Academy of Actuaries (the "Academy") released a new Commissioners Standard Ordinary (CSO) mortality table and report, observing that mortality had continued to improve from the 2001 CSO mortality tables:

> At the request of the NAIC, the Society of Actuaries (SOA) and the American Academy of Actuaries (Academy) have collaborated to create new Valuation Basic Tables (VBT), Relative Risk tables (RR), and Commissioners Standard Ordinary Mortality Tables (CSO). The current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. *Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development*.[1]

10. ANICO has recently confirmed that its "[m]ortality rates will remain reasonably consistent within standard industry mortality table ranges." ANICO 10-K (2019). It has also recently confirmed that it reviews its mortality experience annually. *Id.* ("**At least annually**, we test the adequacy of the net benefit reserves . . . recorded for life insurance. . . . To perform the

---

[1] https://www.soa.org/Files/Research/Exp-Study/research-2017-cso-report.pdf.

tests, **we use our best-estimate assumptions as to policyholder mortality,** persistency, maintenance expenses, and invested asset returns."). Despite these annual reviews conducted which changed (that is, for ANICO, resulted in improved) mortality expectations and corresponding decrease in mortality risk, ANICO never determined its COI rates based on its updated mortality assumptions, which would have resulted in far lower rates than those charged. At the same time, ANICO asserts the right—and many other insurers have exercised their right—to increase COI rates in the event that future experience is more adverse than assumed at pricing. This is wrong: the requirement that rates "will be determined by the Company from time to time based on the Company's expectations as to future mortality experience" runs both ways.

11.     In sum, ANICO has violated and continues to violate its contractual commitment to policyholders that its COI charges will be calculated monthly using rates that "will be determined" based on ANICO's "expectations as to future mortality experience." ANICO has refused to decrease COI rates despite its recent reviews concluding that it has improving future mortality expectations in each of the most recent years. Plaintiff therefore seeks monetary relief for the COI overcharges that ANICO has wrongly imposed on Plaintiff and members of the proposed Class.

**THE PARTIES**

12.     Plaintiff Joe S. Yearby is an individual and a citizen of the state of Louisiana. Mr. Yearby is the owner of ANICO policy number UL090652, issued on June 9, 1986 in the state of California.

13.     Defendant American National Insurance Company is an insurance company organized and existing under the laws of Texas and has its principal place of business in Texas and is licensed to transact insurance in California.

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one defendant and the aggregate amount of damages exceeds $5,000,000. This

1  action therefore falls within the original jurisdiction of the federal courts pursuant to the Class
2  Action Fairness Act, 28 U.S.C § 1332(d).

3      15. This Court has personal jurisdiction over ANICO because ANICO issued the life
4  insurance policies at issue in California.

5      16. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c)
6  because the events giving rise to Plaintiff's cause of action occurred in this District and because
7  ANICO transacts business and/or has transacted business during the relevant time period within
8  the Northern District of California. In addition, a substantial part of the acts and omissions giving
9  rise to the claims on behalf of the Class set forth herein, including ANICO's issuance of
10 Plaintiff's life insurance policy, occurred in this judicial district and/or in the San Francisco
11 Division.

## FACTUAL BACKGROUND

**A.    The Policies at Issue**

14     17. The policies at issue are all flexible-premium, UL policies issued by ANICO in
15 California (the "Subject Policies"). They were all issued on the same standardized policy forms
16 and insureds are not permitted to negotiate different terms.

17     18. UL policies combine death benefits with a savings or investment component, often
18 known as the "account value," "policy value," or "cash value." One benefit of UL policies is that
19 they permit policyholders flexibility in the amount and timing of premiums necessary to keep the
20 policies in-force. Unlike other kinds of whole life insurance that require fixed monthly premium
21 payments, the premiums required for UL policies need only be sufficient to cover the COI
22 charges and certain other specified expenses. The COI charge is deducted from the policy value
23 (i.e., the savings component) of the policy on a monthly basis, so the policyholder forfeits the
24 COI charge entirely to ANICO. Any premiums paid in excess of COI charges and other charges
25 are applied to the policy value. These excess premiums earn interest at the credited rate. This
26 structure is beneficial because it allows policyholders the choice to either (i) minimize their
27 capital investment and generate greater rates of return through other investments or (ii) to use the
28 UL policy as a savings vehicle and earn interest on the account value.

19. The COI charge is supposed to be the insurer's cost of providing mortality coverage, and is designed to fluctuate depending on the insurer's projected mortality experience. The size of the COI charge is highly significant to universal life policyholders. First, it dictates the minimum amount of money that must be paid to keep a policy in force. Second, high COI rates can quickly diminish policy value and reduce the amount of money on which interest can be earned. Absent a secondary guarantee, if the policy value diminishes such that COI charges and certain other specified expenses can no longer be deducted, then the policy will go into grace and, if no additional premiums are paid after adequate time provided by an accurate grace notice, the policy may lapse.

20. Cost of insurance charges are typically the most expensive part of the contract and form the largest deduction from an owner's account value. For example, from June 9, 2018 to June 9, 2019, ANICO made $3,700.48 of deductions from the account value of Plaintiff's policy. Of this, $3,340.71 were deductions for cost of insurance, that is, over 90% of the deductions for that year.

21. The cost of insurance charge ("COI charge" or "mortality charge") is calculated as follows:

> **Cost of Insurance.** The Cost of Insurance is determined on a monthly basis. . . . The Cost of Insurance for the Insured is calculated as (a) multiplied by the result of (b) minus (c), where:
>
> (a) is the Cost of Insurance rate as described in the Cost of Insurance Rates section;
> (b) is the Insured's Proceeds at Death at the beginning of the policy month divided by 1.0032737; and
> (c) is the Cash Value at the beginning of the policy month.

22. The Subject Policies also provide that that monthly cost of insurance rates for any given sex, age, or rating class "will" be determined by ANICO based on its expectations as to future mortality experience:

> **Cost of Insurance Rates.** The <u>monthly Cost of Insurance rate</u> is based on the sex, attained age, and rating class of the person insured. . . . <u>Monthly Cost of Insurance Rates will be determined by the Company from time to time based on the Company's expectations as to future mortality experience</u>. However, the Cost of Insurance Rates will not be greater than those shown in the Table of Guaranteed Maximum Insurance Rates.

23. The Subject Policies are known in the insurance industry as "Single Consideration Policies" because the only factor that the carrier can and must consider when determining monthly COI rates is "expectations as to future mortality experience." Nothing else. Because the cost of insurance on the Subject Policies must be "determined on a monthly basis" and the COI rates "will be determined" based solely on expectations as to future mortality experience, COI rates must be adjusted downward if those expectations improve following review. ANICO imposes other charges through which it recovers administrative expenses and earns a profit. This includes premium expense charges of all premiums and a monthly administrative expense charge. This means that the Subject Policies are "fully unbundled": each component of the policy has a separate charge. ANICO also profits from the interest spread it earns on policyholders' policy values (i.e., the difference between interest earned by ANICO on policy accounts and the amount of interest credited to policy accounts).

24. By contrast, ANICO has issued other insurance policies that do not require it to base its COI rates on mortality alone when that is its intention, including based on its expectations as to future mortality experience as well as investment earnings, persistency, and expenses. These types of policies are known in the insurance industry as Multi-Factor COI Provisions, because it allows the insurer to base COI rates on factors other than pure mortality. The Subject Policies all contain Single-Factor COI Provisions: no factor other than mortality may be considered.

**B.   ANICO Fails to Reduce COI Rates Despite Mortality Improvement**

25. In recent years, ANICO has periodically quantified its "expectations as to future mortality experience" and reviewed its COI rates. In quantifying its future mortality expectations, ANICO performs experience studies which examined its historical mortality experience and, from that mortality experience, develop predictions of mortality it expects to see in the future. These expectations are quantified by insurers in the form of mortality tables, which are charts showing the expected rate of death at a certain age. Rate of death can be measured as a percentage or in terms of the number of deaths per thousand. Separate tables can be produced to reflect groups with different mortality. Mortality tables will usually have separate tables for gender. Mortality

tables for use with individual life insurance policies additionally distinguish mortality rates for tobacco-use status, underwriting status and duration since underwriting. Mortality tables are used by actuaries to calculate insurance rates, and, if developed properly, are designed to reflect the carrier's then-current (that is, that year's) expectations as to future mortality experience.

26. ANICO has updated its expectations as to future mortality experience, first by reviewing its historical mortality experience (i.e., the actual deaths experienced in a given period). Using that recent mortality experience, ANICO reviewed its mortality expectations in order to update those expectations. As part of this process, ANICO adjusts that raw experience (that is, whether each particular insured has died or not) to account for its prediction of how future experience will differ to arrive at its then-expected future mortality experience. Those expectations are then used for financial statements, reserve-setting, and projections of future profits. "For interest-sensitive business, best-estimate assumptions are updated to reflect observed changes based on experience studies and current economic conditions. We reflect the effect of such assumption changes in DAC and reserve balances accordingly." ANICO 10-K (2019) at 33. "American National periodically reviews its estimates of actuarial liabilities for future policy benefits and compares them with its actual experience." *Id.* at 99.

27. Life insurers, like ANICO, have experienced dramatic improvements in mortality experience and mortality expectations. In May 2013, for example, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages, which showed material rates of mortality improvements. In March 2014, the actuarial firm Milliman published a report sponsored by the SOA called "Select Period Mortality" showing select rates of mortality that are strongly improved over prior years. Their report was based on a survey of insurance companies – including ANICO. And in 2017, the 2017 CSO Table took effect, again reflecting continued mortality improvement.

28. ANICO has recently confirmed that its own "[m]ortality rates will remain reasonably consistent within standard industry mortality table ranges," and that it itself has seen "predictable and decreasing mortality rates." In other words, ANICO has recently admitted that

its own expectations of future mortality experience have improved, just as they have industry-wide.

29. Despite this industry-wide and ANICO-specific improvement in mortality rates—and corresponding decrease in the cost of providing mortality coverage—ANICO did not determine COI rates to reflect its updated expectations as to future mortality experience, and has never adjusted its COI rates downward to reflect its improving mortality expectations.

30. The new monthly rates currently being imposed on Plaintiff's policies were not fixed at policy issuance. Each time ANICO imposes a new COI rate as insureds age, that increase must be in conformity with the terms of the policy, including the requirement that such rates "will be determined…based on the Company's expectations as to future morality experience." The COI rates recently imposed on Plaintiff have not been determined on that basis.

31. The nature of ANICO's conduct is such that Plaintiff and each member of the proposed Class would be unaware that ANICO was engaging in wrongdoing, and ANICO has in fact affirmatively concealed its wrongdoing. Only ANICO possesses its internal expectations as to future mortality experience on which COI rates are supposed to be based, and its underlying computation of rates and charges for the Subject Policies, and ANICO does not disclose this information to policyholders.

32. ANICO was aware that Plaintiff and each member of the Class did not know about the improper COI charges because of ANICO's superior and unique knowledge of its COI rates and mortality expectations. ANICO sent Plaintiff annual statements that identified the insurance charges while affirmatively concealing its updated mortality expectations and the factors used to calculate the COI rates. Without disclosure by ANICO of its mortality expectations each year, or the methodology through which COI rates are being calculated and applied, a reasonable policyholder, acting diligently, would have no way of knowing that he or she was being cheated. ANICO is estopped from asserting a statute of limitations affirmative defense. ANICO's conduct in failing to disclose the true factors it was using to determine COI rates misled Plaintiff and prevented him from learning of the factual bases of these claims for relief. Plaintiff proceeded diligently to file suit once he discovered the need to proceed. Plaintiff was not at fault for failing

to discover any breaches and had no actual or presumptive knowledge of the breaches. ANICO is aware that it has superior and in fact exclusive knowledge of its own expectations of future mortality experience, and has in fact used this disparity of knowledge to exploit and cheat policyholders.

## **CLASS ACTION ALLEGATIONS**

33. This action is brought by Plaintiff individually and on behalf of a class pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure. The class—referred to as the "California COI Overcharge Class"—consists of:

> All owners of universal life (including variable universal life) insurance policies issued in California by American National Insurance Company, or its predecessors in interest, that provide that cost of insurance rates are determined based on expectations as to future mortality experience.

The California COI Overcharge Class does not include defendant ANICO, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

34. Each class consists of hundreds of consumers of life insurance and are thus so numerous that joinder of all members is impracticable. The identities and addresses of class members can be readily ascertained from business records maintained by ANICO.

35. The claims asserted by Plaintiff are typical of the claims of the California COI Overcharge Class.

36. The Plaintiff will fairly and adequately protect the interests of the classes and does not have any interests antagonistic to those of the other members of the classes.

37. Plaintiff has retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

38. Plaintiff requests that the Court afford class members with notice and the right to opt-out of any class certified in this action.

39. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the class predominate over any individualized issues. Those common questions that predominate include:

  (a) the construction and interpretation of the form insurance policies at issue in this litigation;

  (b) whether ANICO's actions in failing to calculate and determine monthly COI rates based on its expectations as to future mortality experience for the California COI Overcharge Class violated the terms of those form policies;

  (c) whether ANICO breached its contracts with Plaintiff and members of the classes;

  (d) whether ANICO's expectations as to future mortality experience have improved; and

  (e) whether Plaintiff and members of the classes are entitled to receive damages as a result of the unlawful conduct by defendant as alleged herein and the methodology for calculating those damages.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

  (a) the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

  (b) when ANICO's liability has been adjudicated, claims of all class members can be determined by the Court;

  (c) this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

  (d) without a class action, many class members would continue to suffer injury, and ANICO's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

  (e) this action does not present any undue difficulties that would impede its management by the Court as a class action.

# FIRST CLAIM FOR RELIEF

## Breach of Contract

41. Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this complaint as if fully set forth herein. This claim is brought on behalf of Plaintiff and the California COI Overcharge Class.

42. The Subject Policies are binding and enforceable contracts.

43. ANICO breached its contracts with Plaintiff and members of the California COI Overcharge Class by determining and deducting COI charges calculated using COI rates that were not based on ANICO's expectations as to future mortality experience. These overcharges include, but are not limited to, the excess COI charges that ANICO deducted by not using its then-current mortality expectations to determine rates, and failing to reflect mortality improvement in those rates.

44. Each and every failure to calculate monthly COI charges using rates that are based on ANICO's "expectations as to future mortality experience" constituted a discrete violation of the insurance contract in place at that time. Each such failure to follow contractual mandates violated the contractual rights of Plaintiff and all class members who owned an insurance policy in force at that time.

45. Plaintiff and the members of the California COI Overcharge Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by ANICO's conduct as set forth herein.

46. As a direct and proximate cause of ANICO's material breaches of the policies, Plaintiff and the members of the California COI Overcharge Class have been – and will continue to be – damaged as alleged herein in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff and the California COI Overcharge Class pray for judgment as follows:

1. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Awarding Plaintiff and the class compensatory damages;

3. Awarding Plaintiff and the class pre-judgment and post-judgment interest, as well as costs and attorneys' fees; and

4. Awarding Plaintiff and the class such other relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and California COI Overcharge Class hereby demand a trial by jury as to all issues so triable.

Dated:  December 18, 2020

By: /s/ *Steven G. Sklaver*
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ssklaver@susmangodfrey.com

Seth Ard (*pro hac vice* to be filed)
Ryan Kirkpatrick
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Attorneys for Plaintiff