UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE S YEARBY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AMERICAN NATIONAL INSURANCE<br>COMPANY,<br><br>　　　　　Defendant. | Case No. 20-cv-09222-EMC<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION TO TRANSFER, AND<br>GRANTING IN PART AND DENYING<br>IN PART DEFENDANT'S MOTION TO<br>DISMISS**<br><br>Docket Nos. 39, 43 |

Pending before the Court are Defendant American National Insurance Company's (ANICO's) motion to transfer this case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a), or to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *See* Docket Nos. 39 ("Dismiss Mot."); 43 ("Transfer Mot.").

For the following reasons, the Court **DENIES** the motion to transfer. The Court also **DENIES in part** and **GRANTS in part** the motion to dismiss with leave to amend.

## I.        BACKGROUND

A.        Factual Allegations in the Complaint

Plaintiff Joe S. Yearby's first amended complaint (FAC) alleges as follows. Plaintiff purchased life insurance policy number UL090652 (the "Policy") from ANICO on June 9, 1986, while he was a resident of Oakland, California. *See* Docket Nos. 31 (First Am. Compl. (FAC)) ¶ 12; 43-1 (Decl. of Bruce Pavelka in Supp. of Mot. to Transfer ("Pavelka Decl."), Ex. A-1 ("Policy"). The Policy application, which was part of the Policy, was signed by the parties in California. Policy at 31, 33. ANICO allegedly sought and obtained approval from California state insurance regulators before selling and issuing the Policy to Plaintiff. FAC ¶ 15.

In or around October 1995, Plaintiff notified ANICO that he had relocated from Oakland to Glendale, Arizona. Pavelka Decl. ¶ 9. In 2005, Plaintiff again changed his address on file with ANICO to his current address in Monroe, Louisiana. *Id.* The FAC thus states that Plaintiff currently "is an individual and citizen of the state of Louisiana." FAC ¶ 12. ANICO is an insurance company organized and existing under the laws of Texas with a principal place of business in Galveston, which is in the Southern District of Texas. FAC ¶ 13; Pavelka Decl. ¶ 5.

The gravamen of Plaintiff's FAC is that, starting in 2010, ANICO considered factors beyond the terms of the Policy to determine the cost of insurance (COI) rates it charged Plaintiff under the Policy. *Id.* ¶ 11. More specifically, Plaintiff alleges ANICO failed to decrease its COI charges, as was required by the Policy. *Id.* Plaintiff brings a single cause of action for common law breach of contract to recover the alleged COI overcharges. *Id.*

Plaintiff seeks to represent a class of ANICO policyholders who purchased life insurance policies from ANICO in California and "who have been forced since January 1, 2010 to pay unlawful and excessive COI rates, deducted from their account values on a monthly basis that are not, as the policies require, determined from time to time by ANICO based on its expectations as to future mortality experience." FAC ⁋ 1, 33. According to the FAC, venue is proper in this District because "the events giving rise to Plaintiff's cause of action occurred in this District and because ANICO transacts business and has transacted business during the relevant time period within the Northern District of California." *Id.* ¶ 16. ANICO is licensed to transact insurance in California. *Id.* ¶ 13. Additionally, "a substantial part of the acts and omissions giving rise to the claims on behalf of the Class set forth herein, including ANICO's issuance of Plaintiff's life insurance policy, occurred in this judicial district and/or in the San Francisco Division." *Id* ¶ 16.

B.     Procedural History

Plaintiff filed his initial class action complaint on December 18, 2020 and his FAC on April 23, 2021. *See* Docket No. 1 ("Compl."); FAC. ANICO filed a motion to dismiss the FAC on May 7, 2021 and a motion to transfer this case to the Southern District of Texas on May 13, 2021. *See* Dismiss Mot.; Transfer Mot.

United States District Court
Northern District of California

2

## II.        MOTION TO TRANSFER

Under 28 U.S.C. § 1404(a), a district court has discretion to transfer a case to another

district where it might have been brought.  Defendant seeks to transfer this case to the Southern

District of Texas, where it is incorporated and has its principal place of business.  Transfer Mot. at

3.  "The party seeking transfer has the burden of showing that transfer is appropriate." *Kaur v.*

*U.S. Airways, Inc.*, No. C-12-5963 EMC, 2013 WL 1891391, at *2 (N.D. Cal. May 6, 2013)

(citing *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979)).

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove

equally convenient or inconvenient." *Mainstay Bus. Sols. v. Indus. Staffing Servs.*, No. ICVS-10-

3344 KJM GGH, 2012 WL 44643, at *1 (E.D. Cal. Jan 9, 2012) (citing *Van Dusen v. Barrack*,

376 U.S. 612, 645–46 (1964)).  A court considering a motion to transfer venue must determine

whether venue is proper in this District; whether plaintiff could have brought the action in the

transferee district; and whether the transfer will promote convenience and fairness.  *Stewart Org.,*

*Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Hoffman v. Bilaski*, 363 U.S. 335, 343–44 (1960).

Because the parties do not dispute that this action could be brought in this District or in the

Southern District of Texas, *see* Transfer Mot. at 7–8, Docket No. 46 ("Transfer Opp'n"), the only

question is whether this Court should transfer this action "for the convenience of the parties and

witnesses, and in the interest of justice."  28 U.S.C. § 1404(a).

Courts engage in an "individualized, case-by-case consideration of convenience and

fairness" to determine if transfer is appropriate.  *Stewart Org.*, 487 U.S. at 29 (quoting *Van Dusen*,

376 U.S. at 622).  This individualized inquiry requires the Court to consider the following factors:

(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4)

ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility

of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative

court congestion and time to trial in each forum.  *See, e.g., Gonzales v. Charter Commc'ns, LLC*,

No. 20-CV-02689-EMC, 2020 WL 5074024, at *2 (N.D. Cal. Aug. 24, 2020).  "Weighing of the

factors for and against transfer involves subtle considerations and is best left to the discretion of

the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (quoting

1    *Savage,* 611 F.2d at 279).  "A district court is not restricted to the pleadings on a motion to

2    transfer and may consider, *inter alia,* undisputed facts supported by affidavits, depositions,

3    stipulations, or other relevant documents."  *Esquer v. StockX, LLC*, No. 19-CV-05933-LHK, 2020

4    WL 3487821, at *2 (N.D. Cal. June 6, 2020).

5           The Court will evaluate each of these factors in order of relative importance to decide the

6    transfer motion.[1]

7    A.    <u>Plaintiff's Choice of Forum (First Factor)</u>

8           "The defendant must make a strong showing of inconvenience to warrant upsetting the

9    plaintiff's choice of forum," which is generally "accorded significant deference."  *See Decker*

10   *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  FAC ¶ 12; Policy at

11   31, 33.  In *Lou v. Belzberg*, the Ninth Circuit explained that

12              [i]n judging the weight to be accorded [plaintiff's] choice of forum,
                consideration must be given to the extent of both [plaintiff's] and the
13              [defendants'] ***contacts with the forum***, including those relating to
                [plaintiff's] cause of action. . . .  If the ***operative facts*** have not
14              occurred within the forum and the forum has no interest in the
                parties or subject matter, [plaintiff's] choice is entitled to only
15              minimal consideration.

16   834 F.2d 730, 739 (9th Cir. 1987) (emphasis added) (citations omitted).  Applying *Lou*, courts in

17   this district have given a plaintiff's choice of forum varying levels of deference depending on

18   whether there is evidence of forum shopping, the plaintiff resides in the forum, and the plaintiff

19   chose a forum with no connection to the underlying dispute.  *See e.g.*, *Doe v. Epic Games, Inc.*,

20   435 F. Supp. 3d 1024, 1041 (N.D. Cal. 2020) ("A Plaintiff's choice of forum receives only

21   minimal deference if the operative facts did not occur within the forum and the forum has no

22   interest in the parties or subject matter."); *Gonzales*, 2020 WL 5074024, at *2 ("[W]here plaintiffs

23   have engaged in forum shopping or chosen a forum with no connection to the underlying dispute,

24   'the burden on the defendant is reduced and it is easier for the defendant to show that the balance

25   of convenience favors transfer.'" (quoting *Gupta v. Perez*, No. 5:14–cv–01102 HRL, 2014 WL

26   2879743, *3 (N.D. Cal. June 24, 2014)); *Kaur*, 2013 WL 1891391, at *3 ("To be sure, '[w]here a

27

28   ---
     [1] The Court will not address the sixth factor—the feasibility of consolidation with other claims—
     because neither party identifies other claims that could be consolidated with Plaintiff's claims.

United States District Court
Northern District of California

plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight.'" (quoting *Vu v. Ortho–McNeil Pharm., Inc.*, 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009)); *Inherent.com v. Martindale–Hubbell*, 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006) ("[T]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced when the plaintiff's choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint.").  Although Plaintiff no longer resides here, his choice of forum is nonetheless entitled to significant deference because there is no evidence of forum shopping and this District has a strong connection to the underlying dispute given that all the policies in the proposed class were issued in California.

ANICO first argues that Plaintiff's choice of forum is entitled to little deference because he moved out of this District long before ANICO allegedly failed to reduce the COI charges in violation of the Policy.  Indeed, some courts in this district have afforded less deference to a plaintiff's choice of forum when the plaintiff does not reside in the District, and especially when the plaintiff did not reside in the district when the alleged underlying conduct occurred.  *See e.g.*, *Kaur*, 2013 WL 1891391, at *3; *Vu*, 602 F. Supp. 2d at 1156 (N.D. Cal. 2009)); *Inherent*, 420 F. Supp. 2d at 1100.  But a plaintiff's residency at the time a defendant files a transfer motion is not dispositive.  In *Kaur*—a labor dispute—the court held that even though the plaintiff moved to Arizona after filing suit, that was "not a case where a plaintiff has no ties to a district is engaging in forum shopping" because the plaintiff "resided in this District during the entire time that the events in question took place" and "many of the events at issue can be said to have occurred in this District."  2013 WL 1891391, at *3.  Similarly, the court in *Jimenez v. Haxton Masonry Inc.*, held that the parties' "connections to this district, which give rise to the Amended Complaint, warrant deference to the Plaintiff's choice of forum," even though the named Plaintiff was *always* an Arizona resident.  No. 18-CV-07109-SVK, 2019 WL 9573762, at *3 (N.D. Cal. May 10, 2019).  In that case—also a labor dispute—although the named plaintiff had *never* resided in California, he alleged the defendant failed to compensate him and other similarly situated employees who traveled to work on the defendant's California job sites.  *Id.*  That Plaintiff moved out of the district is therefore not dispositive if the "operative facts have . . . occurred within" this District

United States District Court
Northern District of California

1  and the parties have "contacts with [this District], including those relating to [Plaintiff's] cause of

2  action." *Lou*, 834 F.2d at 739.

3        This leads to ANICO's second argument, which is that Plaintiff's choice of forum is

4  entitled to little deference because the FAC's alleged operative facts—namely, that ANICO failed

5  to reduce the COI rates in accordance with the Policy—took place at ANICO's Galveston

6  headquarters in the Southern District of Texas.  *See* Transfer Mot. at 13–14; Docket No. 26-2

7  (Decl. of Dustin Dusek ("Dusek Decl.")) ¶¶ 9–11.  According to ANICO, "[m]ost, if not all, the

8  current or former employees of [ANICO] who were involved in the [policies] and, in particular,

9  their COI rates and COI charges work in Galveston, Texas."  *Id.* ¶ 11.  Indeed, there is no

10  indication in the FAC that the decision not to decrease the COI charges was made through

11  ANICO's California contacts; to the contrary, ANICO insists, and Plaintiff does not dispute, that

12  decision was made from ANICO's headquarters in Galveston.  Furthermore, by the time ANICO

13  decided to increase the COI charges in 2010, the Plaintiff had been living outside of California for

14  fifteen years.  Pavelka Decl. ¶¶ 9–12, 17.  As a result, the present case is somewhat distinguishable

15  from *Kaur* and *Jimenez* because not all the operative facts at the core of Plaintiff's claim took

16  place in this District.

17        Admittedly, other courts facing similar fact patterns have transferred cases to the insurer's

18  home forum despite involving insurance policies issued in California.  The court in *EFG Bank AG,*

19  *Cayman Branch v. Lincoln National Life Insurance Company*, for example, transferred the case to

20  the Eastern District of Pennsylvania after concluding that "Plaintiffs' choice of forum [was]

21  entitled to minimal deference because . . . the operative facts (*i.e.*, the decision to make the COI

22  Adjustment) occurred outside of California at Defendant's offices in North Carolina, Indiana, and

23  Pennsylvania."  *See* No. CV 17-817-JFW(KSX), 2017 WL 5635022, at *3 (C.D. Cal. June 8,

24  2017).  In that case, like here, the plaintiffs alleged that "Lincoln regularly conducts and transacts

25  business in California, including having issued the life insurance policies at issue in this complaint

26  in California," and that "a substantial part of the events giving rise to the claims occurred in [the

27  Central District], including Lincoln's issuance of some of the policies at issue in this Complaint."

28  *EFG Bank*, No. CV 17-817-JFW(KSx) (C.D. Cal. filed Feb. 1, 2017), Docket No. 1 ("Compl.") ¶¶

United States District Court
Northern District of California

1  2–3.  The *EFG Bank* court nonetheless held that the fact that Lincoln issued insurance policies in

2  California—included those at issue in the lawsuit—did not merit affording the plaintiffs' choice of

3  forum significant deference because the operative facts took place elsewhere.

4  Plaintiff correctly points out, however, that the facts of *EFG Bank* are materially different

5  because other plaintiffs had previously filed an identical action in the Eastern District of

6  Pennsylvania.  2017 WL 5635022, at *3.  Therefore, "the question for the Court [was] not

7  'whether [that] action would be more conveniently litigated in [the alternative forum], but whether

8  it would be more convenient to litigate the [two] actions separately or in a coordinated

9  fashion.'"  *Id.* (quoting *Elecs. For Imaging, Inc. v. Tesseron. Ltd.*, No. C 07-05534 CRB, 2008

10  WL 276567, *2 (N.D. Cal. Jan. 29, 2008)).  The impetus to transfer the case in *EFG Bank* was

11  therefore not that the operative facts took place outside the plaintiff's chosen forum, but "that,

12  given the substantial overlap in issues, witnesses, and documents, the interest of justice requires

13  that this action and the Pennsylvania Consolidated Action should be litigated together, and that

14  these considerations strongly outweigh Plaintiffs' choice of forum."  *Id.*

15  Defendant also cites *Smithson v. Jackson National Insurance Companies*, where the court

16  was facing similar facts to the instant case: although the plaintiff did not reside in the Central

17  District of California, "he assert[ed] that the 'forum has a substantial nexus to the subject matter of

18  this lawsuit' because [he] purchased the insurance policy at issue in California, and lived in

19  California for 13 years after purchasing the policy."  No. CV177485FMORAOX, 2018 WL

20  5099510, at *2 (C.D. Cal. May 29, 2018).  The *Smithson* court nonetheless transferred the case to

21  the Western District of Michigan after concluding that the plaintiff's choice of forum was entitled

22  to "little deference" because "[w]hile the location of where an agreement was formed and

23  executed is often viewed as a neutral factor . . . here plaintiff's claims center not on the formation

24  of the insurance policies, but instead [on] whether Jackson, acting through its employees in

25  Michigan, breached its contracts with policyholders."  *Id.*  Other courts have transferred similar

26  cases where the operative facts involve adjustments of COI rates, which usually take place in the

27  forum where the insurance company is headquartered.  *See e.g. Wenokur v. AXA Equitable Life*

28  *Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017)

("Although the Wenokur Policy was issued in Arizona, Plaintiffs' claims center not on the formation of the policies, but instead whether AXA, acting through employees in New York City, breached its contracts with policyholders when it increased COI rates."); *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014) (transferring case to Western District of Texas "because Defendant has little connection with California outside of the presence of policyholders in this state, and all of the conduct underlying the premium increase occurred in Texas"); *Burnett v. Conseco Life Ins. Co.*, No. ED12CV01715VAPSPX, 2018 WL 4945523, at *3 (C.D. Cal. Jan. 24, 2018) ("Plaintiffs are entitled to less deference because . . . the case is filed outside of Plaintiffs' home district, and . . . the majority of the facts giving rise to the case took place in the Southern District of Indiana.")

These cases are distinguishable, however, because they involved plaintiffs seeking to represent a nationwide class, not a California-only class. *See* 2018 WL 5099510, at *2 ("[P]laintiff does not reside in the Central District of California . . . and he seeks to represent a nationwide class."); *Wenkour*, 2017 WL 4357916, at *3 ("Although this factor is generally given significant weight, it is afforded less deference when, as here, the action is brought as a nationwide putative class action."); *Saunders*, 71 F. Supp. 3d at 1061 ("But while this factor can sometimes be a weighty one under other circumstances, it is afforded less deference when, as here, the action is brought as a class action on behalf of a representative class."); *Burnett*, 2018 WL 4945523, at *3 ("Plaintiffs are entitled to less deference because this is a nation-wide class action."). Here, by contrast, the FAC defines the "California COI Overcharge Class" as:

> All owners of universal life (including variable universal life) insurance policies issued *in California* by American National Insurance Company, or its predecessors in interest, that provide that cost of insurance rates are determined based on expectations as to future mortality experience, and that were subjected to monthly cost of insurance deductions on or after January 1, 2010.

FAC ¶ 33 (emphasis added). Plaintiff does not seek to represent any class members who purchased their policies outside of California.

The fact that this is a California-only class action militates strongly in favor of Plaintiff's choice of forum because this Court has an interest in ensuring that residents of its forum state are

8

1    treated fairly.  All the policies that are potentially at issue in this case were issued in California

2    and are therefore—absent a choice of law clause to the contrary—subject to California contract

3    law.  *Mosier v. Phoenix Life Ins. Co.*, No. SACV12227PSGEX, 2013 WL 12132065, at *3 (C.D.

4    Cal. Jan. 15, 2013) ("[I]n the absence of an effective choice of law by the parties, the law of the

5    state where the insured is domiciled at the time the policy is applied for usually determines the

6    validity of a life insurance contract and the rights created under it." (citing 2 Witkin, Summary of

7    Cal. Law (10th), Insurance § 26 (citing Restatement (Second) of Conflict of Laws § 192))).

8            Therefore, the Plaintiff's choice of forum is "not purely fortuitous" because, although he is

9    bringing a class action, the class is limited to owners of life insurance policies issued by AMICO

10   in California.  *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803 EMC, 2011 WL 2653565, at *4

11   (N.D. Cal. July 6, 2011).  In *Sonoda*, Mr. Sonoda's choice of forum was not fortuitous because

12   "Mr. Sonoda [was] not just seeking to represent a nationwide class; he [was] *also* seeking to

13   represent a *California subclass*." *Id.* (emphasis added).  That meant that the defendant "had

14   contacts with California . . . which gave rise to Mr. Sonoda's claims." *Id* at *4.  Numerous other

15   courts have likewise so held.  *See also Olosoni v. HRB Tax Grp., Inc.*, No. 19-CV-03610-SK,

16   2019 WL 7576681, at *4 (N.D. Cal. Nov. 27, 2019) ("[T]he proposed class is comprised

17   exclusively of California plaintiffs. The Court finds that Plaintiffs' choice of this forum is not

18   largely fortuitous, and thus the Court affords great weight to Plaintiffs' choice of forum.");

19   *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-CV-00792-EMC, 2019 WL 5789273, at *8

20   (N.D. Cal. Nov. 6, 2019) ("[T]he proposed class in this case is limited to people 'who performed

21   work for Defendants in the State California,' . . . so there is little reason to give less weight to the

22   named Plaintiffs' choice of forum here." (citations omitted)); *Jimenez*, 2019 WL 9573762, at *3

23   ("Given the particular circumstances of this action, the fact that Plaintiff seeks to bring a class

24   action does not undermine the deference this Court gives to his choice of forum. . . .  Here,

25   Plaintiff's claims relate to work conducted by Plaintiff and other potential class members in this

26   District and in California."); *Holliday v. Lifestyle Lift, Inc.*, No. C 09-4995 RS, 2010 WL 3910143,

27   at *6 (N.D. Cal. Oct. 5, 2010) ("[T]he California subclass advances claims grounded upon

28   California labor law.  Accordingly, this case is not one where all operative facts occurred

United States District Court
Northern District of California

elsewhere or where the "forum has no interest in the parties or subject matter."); *Evancho*, 2007 WL 1302985, at \*2 ("[T]he Court accords plaintiffs' choice of forum some weight.  While the putative class members are scattered across the country, one of the named plaintiffs resides in this District and another resides elsewhere in California.").  Even more than the plaintiffs in *Sonoda*, *Holliday*, and *Evancho*, the Court should defer to Plaintiff's choice of forum because *all* the putative class members' policies were also issued in California, and ANICO continues to issue policies in California, such that "there are strong contacts between [this District] and the dispute." *Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 710 (N.D. Cal. 2020) (quoting *Lou*, 834 F.2d at 739).

Accordingly, the Court affords Plaintiff's choice of forum significant deference because, although Plaintiff does not live here anymore, there is no evidence of forum shopping and this District has a strong connection to the underlying dispute given that all the policies in the proposed class were issued in California.

B.    Other Factors

Because the Court gives Plaintiff's choice of forum significant deference, ANICO must "make a strong showing of inconvenience to warrant upsetting [P]laintiff's choice of forum." *Decker Coal*, 805 F.2d at 843; *see also Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, No. C 13-03532 WHA, 2013 WL 6057824, at \*2 (N.D. Cal. Nov. 15, 2013) ("As deference to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases.").  ANICO fails to meet its substantial burden of showing that the other factors weigh in favor of transfer.

1.    Convenience of the Parties and Witnesses (Second and Third Factors)

Convenience of the parties and witnesses is neutral.  Convenience of the witnesses is "often recognized as the most important factor to be considered." *Metz v. The United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009).  However, this factor turns primarily on the convenience of *non-party* witnesses and places particular focus on whether the court has subpoena power to compel a particular witness's testimony. *United States v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2018 WL 4053484, at \*5 (N.D. Cal. Aug. 24, 2018).  "Courts give less

consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur."  *Id.* (quoting *Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014)); *see also Sonoda*, 2011 WL 2653565, at *6 (finding that the defendant will likely be able to arrange to have its former and current employee testify at trial).

Defendant argues that the Southern District of Texas is more convenient because all the witnesses it identifies as having information relevant to this dispute are located there.  Transfer Mot. at 3–4, 14–15.  But as Plaintiff points out, ten of the eleven individuals ANICO identified are party witnesses—*i.e.*, current ANICO employees—who could be compelled to testify in this District.  Transfer Opp'n at 14–15.  The only third-party witness that either party has identified is Ron Welch, a retired ANICO employee, who may or may not reside in the Southern District of Texas.  Mot. at 14–15.  It is therefore unclear which forum is more convenient to Mr. Welch.

Accordingly, it is equally convenient for the parties and the witnesses to litigate this case in either district.

2.      Ease of Access to Evidence (Fourth Factor)

It is undisputed that access to most—if not all—of the relevant evidence in this case is slightly easier in the Southern District of Texas, where ANICO has its Galveston headquarters.  *See* Dusek Decl. ¶¶ 8–10, 16; *see Smith v. Oakley Transp., Inc.*, No. 19-cv-05854-EMC, 2020 WL 563076, at *2 (N.D. Cal. Jan. 30, 2020) (transferring proceeding to Florida because "the evidence is far more focused in Florida than in California"); *Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674396, at *5 (N.D. Cal. Sept. 25, 2019) (transferring proceeding to Florida where "the bulk of documentary evidence will likely be in Florida, where [defendant] resides").  It is important not to overstate the importance of this factor, however, as most of the documentary evidence in this case is likely available electronically and will thus be equally accessible in either forum.  *Stribling v. Picazo*, No. 15-CV-03337-YGR, 2018 WL 620146, at *4 (N.D. Cal. Jan. 30, 2018) ("[W]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden.") (quoting *Friends of Scot. Inc. v. Carroll*, No. C-12-01255-WHA, 2013 WL 1192956, at *3 (N.D. Cal. Mar. 22, 2013)); *Hansell v. TracFone Wireless, Inc.*,

No. C-13-3440 EMC, 2013 WL 6155618, at *4 (N.D. Cal. Nov. 22, 2013) ("When the evidence is in electronic form, this factor is neutral or carries minimal weight."); *Sarinara v. DS Waters of Am. Inc.*, No. C–13–0905 EMC, 2013 WL 3456687 at *2 (N.D. Cal. July 9, 2013) ("Ease of access to evidence is neutral, given the availability of digital records."). Still, Plaintiff does not identify any key evidence that is located in this District. *See, e.g.*, *Metz*, 674 F. Supp. 2d at 1149 (ease of access weighs in favor of transfer where plaintiff failed to specify sufficient evidence in his chosen venue). It is thus slightly easier to access evidence in the Southern District of Texas.

Accordingly, this factor weighs only slightly in favor of transfer.

3.    Familiarity With the Applicable Law (Fifth Factor)

This Court's familiarity with California law slightly weighs against transferring this case. California law applies to this dispute even if this Court transfers the case to Texas. *See Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983) (holding that the law of the transferor court is applied by the transferee court in cases transferred for the convenience of the parties under § 1404(a)); *Smithson*, 2018 WL 5099510, at *4 ("The law of the transferor court is applied by the transferee court in § 1404(a) transfers" (quoting *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL 2754249, *3 (S.D. Cal. July 9, 2010)); *Mosier*, 2013 WL 12132065, at *3 ("[I]n the absence of an effective choice of law by the parties, the law of the state where the insured is domiciled at the time the policy is applied for usually determines the validity of a life insurance contract and the rights created under it." (citing 2 Witkin, Summary of Cal. Law (10th), Insurance § 26)). Courts in this district likely have more experience deciding questions of California law than federal courts in Texas. *See Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983JSW, 2007 WL 4532214, at *6 (N.D. Cal. Dec. 19, 2007) ("The Northern District of California is more familiar with the relevant California state laws that govern the state claims."). That being said, "[r]egardless of which state's law governs the contract dispute, federal judges routinely interpret other states' laws during their tenure on the bench." *Hunt v. Ameritas Life Ins. Corps.*, No. 4:19-CV-01657-JSW, 2019 WL 7666755, at *4 (N.D. Cal. Sept. 25, 2019).

1     Accordingly, this factor only weighs slightly against transferring this case.

2          4.     Local Interest in the Controversy (Seventh Factor)

3     Plaintiff argues that "[t]his is a local controversy" because "[to] issue Plaintiff's policy and

4     the putative class's policies, ANICO was required to, and did, obtain a license and form approval

5     from the California Department of Insurance."  Transfer Opp'n at 11–12.  This argument is not

6     very persuasive because Plaintiff does not explain how that licensing and approval process bears,

7     in any way, on his claims that ANICO violated the terms of the Policy by failing to reduce the

8     COI rates.  To the contrary, he admits the process of negotiating or issuing the Policy is *not* at

9     issue in this lawsuit.  Transfer Opp'n at 20 ("These form contracts [*i.e.* the policies] are not subject

10    to negotiation.").  On the other hand, California's regulatory interests over insurers who do not

11    abide by their legal obligations would presumably be of interest to this state.

12    Plaintiff also contends this District has an interest in this action because ANICO argues in

13    its motion to dismiss, among other things, that *res judicata* bars this action because a court in this

14    District approved a class settlement in a previous action brought by another person on behalf of a

15    class that included Plaintiff (the "*Albanoski* Action").  *See* Transfer Mot. at 4–6, 19–22 (citing

16    *Albanoski v. Am. Nat'l Ins Co.*, No. 5:06-cv-02310-JF (N.D. Cal. Sept. 22, 2006) (final order

17    approving the class action settlement)).  The fact that the prior *Albanoski* Action was decided in

18    this District is not enough to create a local interest in the instant action, however, because the

19    district court in Texas has the same ability as this Court to determine whether the *Albanoski*

20    Action involved the same claim, the same parties, and whether it was decided on the merits, *i.e.*,

21    whether *res judicata* applies.  *See Glob. Indus. Inv. Ltd. v. Chung*, No. 19-CV-07670-LHK, 2020

22    WL 5355968, at *4 (N.D. Cal. Sept. 7, 2020) (laying out the elements of *res judicata*).

23    That being sad, the State of California does have an interest in this dispute because it

24    involves insurance policies issued in California to California residents.  *Cf. Smithson*, 2018 WL

25    5099510, at *4 ("None of the parties are California residents and therefore California has very

26    little interest in the controversy.").  Again, because Plaintiff seeks to represent a California-only

27    class, there is local interest in this controversy.

28    Accordingly, this factor weighs against transferring this case.

United States District Court
Northern District of California

5.        Relative Court Congestion and Time to Trial in Each Forum (Eight Factor)

The parties dispute whether it takes longer to get to trial in this District or the Southern District of Texas.  Mot. at 16–17; Transfer Opp'n at 18.  This Court refuses to balance this factor "because ongoing application of this doctrine could have the unintended consequence of penalizing efficiency by effectively placing more cases in the districts with the shortest time to trial."  *Adam v. Barone*, No. 20-CV-00761-EMC, 2020 WL 4584182, at *7 (N.D. Cal. Aug. 10, 2020) (quoting *Perez v. Performance Food Grp., Inc.*, No. 15-CV-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017)).  This Court is also skeptical that it is even possible to accurately and meaningfully capture a given district's time to trial *as of today*, which is the only relevant time period.  *Id.*  Accordingly, the Court will not weigh this factor in determining whether to transfer this case.

In sum, the Court concludes that transferring this case to the Southern District of Texas is not "in the interest of justice."  28 U.S.C. 1404(a).

## III.        MOTION TO DISMISS

A.        Legal Standards

1.        Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Under Rule 12(b)(2), a court must dismiss an action where it does not have personal jurisdiction over a defendant.  Fed. R. Civ. P. 12(b)(2).  "[T]he plaintiff bears the burden of establishing that jurisdiction is proper."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  However, "[w]here, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss."  *Id.*  In addition, "[u]ncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor."  *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

2.        Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

1    complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

2    Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

3    decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

4    U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the

5    claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

6    Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the

7    pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

8    *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

9    simply recite the elements of a cause of action [and] must contain sufficient allegations of

10   underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

11   *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

12   990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

13   content that allows the court to draw the reasonable inference that the Defendant is liable for the

14   misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

15   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

16   unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.    <u>Discussion</u>

18        Because a court must dismiss the action if it determines that it lacks personal jurisdiction

19   as to the plaintiff's claim, *see* Fed. R. Civ. P. 12(b)(2), this order first addresses ANICO's

20   arguments under Rule 12(b)(2) before turning to its request for relief under Rule 12(b)(6).

21        1.    <u>Rule 12(b)(2) Motion to Dismiss For Lack of Personal Jurisdiction</u>

22        Where no federal statute authorizes personal jurisdiction, the district court applies the law

23   of the forum state where it sits.  *See Freestream Aircraft*, 905 F.2d at 602.  California's long-arm

24   statute reaches the limits of due process set by the United States Constitution.  Cal. Civ. Proc.

25   Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with

26   the Constitution of this state or of the United States."); *Mavrix Photo*, 647 F.3d at 1223 ("[Section

27   410.10] is coextensive with federal due process requirements, so the jurisdictional analyses under

28   state law and federal due process are the same.").  "Constitutional due process requires that a

United States District Court
Northern District of California

1    defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the

2    suit does not offend traditional notions of fair play and substantial justice.'" *Freestream Aircraft*,

3    905 F.2d at 602 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

4          There are two types of personal jurisdiction: (1) general jurisdiction and (2) specific

5    jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15

6    (1984).  Neither party argues that this Court has general jurisdiction, so this order will address

7    only specific jurisdiction.  To determine whether it has specific jurisdiction, the Court applies the

8    "minimum contacts test," which has the following three prongs:

9                  (1) The non-resident defendant must purposefully direct his
                   activities or consummate some transaction with the forum or
10                 resident thereof; or perform some act by which he purposefully
                   avails himself of the privilege of conducting activities in the forum,
11                 thereby invoking the benefits and protections of its laws;

12                 (2) the claim must be one which arises out of or relates to the
                   defendant's forum-related activities; and
13

14                 (3) the exercise of jurisdiction must comport with fair play and
                   substantial justice, *i.e.*, it must be reasonable.

15   *Freestream Aircraft*, 905 F.2d at 603 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374

16   F.3d 797, 802 (9th Cir. 2004)).  The minimum contacts test "ensures that a defendant will not be

17   haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."  *Id.*

18   (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

19         Here, the Court has specific jurisdiction over ANICO because, under the minimum

20   contacts test, "[ANICO] has sufficient contacts with [California] to warrant the court's exercise of

21   jurisdiction."  *Id.*

22                  a.    Purposeful Availment

23         In contract claims, including insurance disputes, courts apply a "purposeful availment

24   standard'" to determine if a defendant satisfies the first prong of the minimum contacts test.

25   *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Under that standard, a defendant

26   "purposefully avail[s] itself of the privilege of doing business in the forum" if it "performed some

27   type of affirmative conduct which allows or promotes the transaction of business within the forum

28   state."  *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 199)).  Importantly, the Ninth

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    Circuit has counseled that "the evaluation of the jurisdictional significance of a defendant's

2    contract or other business in the forum is not rigid or formalistic, but rather practical and

3    pragmatic." *Id.*  In other words, "the formation of a contract with a nonresident defendant is not,

4    standing alone, sufficient to create jurisdiction."  *Id.*  Instead, the court "must look to 'prior

5    negotiations and contemplated future consequences, along with the terms of the contract and the

6    parties' actual course of dealing' to determine if the defendant's contacts are '*substantial*' and not

7    merely 'random, fortuitous, or attenuated.'"  *Sher*, 911 F.2d at 1362 (quoting *Burger King*, 471

8    U.S. at 479, 480).

9         Here, Plaintiff's FAC alleges that ANICO purposefully availed itself of the privilege of

10   doing business in California because it (1) "issued the life insurance policies at issue in

11   California;" (2) "insur[ed] the lives of California residents;" (3) "serviced approximately 1,500

12   active life insurance policies issued in California;" (4) "receive[d] premium payments from

13   California residents, including from Plaintiff while he resided in California and currently other

14   members of the proposed class;" (5) "market[ed] its class and other policies to California

15   residents;" (6) "maintain[ed] a network of insurance agents in California who sell ANICO life

16   insurance policies;" and (7) "was required to make submissions to and seek approval from the

17   California insurance regulator before issuing and selling Plaintiff's policy and the other class

18   members' policies in California."  FAC ⁋ 15.

19        The Ninth Circuit and several other courts have correctly held that these and other similar

20   actions on the part of out-of-state insurers constitute "affirmative conduct which allow[ed] or

21   promote[d] the transaction of business within the forum state."  *U.S. Bank, N.A. v. Sun Life*

22   *Assurance Co. of Can.*, No. CV1700670BROASX, 2017 WL 5957644, at *6 (C.D. Cal. June 16,

23   2017) (quoting *Sher*, 911 F.2d at 1362).  For example, in *Hirsch v. Blue Cross, Blue Shield of*

24   *Kansas City*, the Ninth Circuit held that Blue Cross—an out-of-state insurer—had purposefully

25   availed itself of the privilege of doing business in California because it "freely negotiated the

26   Enrollment Agreement with Southwest, to cover all of its employees, knowing that Southwest

27   employed people nationwide," which obviously included California.  800 F.2d 1474, 1479 (9th

28   Cir. 1986).  Likewise, ANICO freely negotiated Plaintiff's Policy in California knowing that

1    Plaintiff was, at the time, a California resident, such that "[ANICO] not only could foresee that its

2    actions would have an effect in California, but also that the effect 'was contemplated and

3    bargained for.'"  *Id.* (quoting *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d

4    1392, 1396 (9th Cir. 1986)).  More importantly, the panel in *Hirsch* relied on "the nature of Blue

5    Cross's ongoing commitment to the Hirsches to honor contractual obligations and pay for needed

6    medical care" in California.  *Id.* at 1480, n.3.  ANICO also made an ongoing commitment to

7    Plaintiff and the other putative California class members that it would insure their lives wherever

8    they reside, including, of course, California.  *Id.* at 1480 n.3.  Therefore, ANICO—like Blue Cross

9    in *Hirsch*—"through its *own actions* in agreeing to provide coverage to [Plaintiff], created a

10   continuing obligation to [him], and a substantial connection with California."  *Id.* at 1480.

11        Similarly, in *U.S. Bank* the out-of-state insurer—Sun Life—issued a life insurance policy

12   to a California resident who later sold the policy to U.S. Bank, who was not a California resident.

13   2017 WL 5957644, at *1.  When Sun Life refused to pay on the policy, U.S Bank sued them in the

14   Central District of California.  *Id.*  Applying *Hirsch*, the *U.S. Bank* court concluded Sun Life had

15   purposefully availed itself of the privilege of doing business in California because it—like ANICO

16   here—"was aware that by working with [a local insurance broker], who was licensed in California,

17   it could receive applications from California residents" and that "it was issuing an insurance policy

18   against the life of a California resident." *Id.* at *6.  That the California resident later sold the

19   policy to an out-of-state third party did not matter because "the effect [of issuing the policy] in

20   California was not only foreseeable, it was contemplated and bargained for."  *Id.* (quoting *Haisten*,

21   784 F.2d at 1398).  Here too, the fact that Plaintiff moved out of California after the Policy issued

22   does not change the fact that, at the time the Policy was issued, ANICO foresaw, contemplated,

23   and bargained for the issuance of an insurance policy on behalf of a California resident that had

24   effect *in California*.

25        Accordingly, the Court concludes that ANICO purposefully availed itself of the privilege

26   of doing business in California by voluntarily obtaining regulatory approval for and issuing the

27   Policy to, Plaintiff—then a California resident— in California, and by knowingly committing to

28   provide him with life insurance for the life of the Policy, regardless of where he chose to live.

United States District Court
Northern District of California

18

1

                        b.           Arising Out of Forum-Related Activities

2

       "To determine whether a plaintiff's claims arise out of the defendant's local conduct, the

3

Ninth Circuit asks whether the defendant's forum-related activities were a 'but-for' cause of the

4

plaintiff's claims." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

5

No. 7347, 2020 WL 4905093 (N.D. Cal. Aug. 20, 2020) (quoting *Ballard v. Savage*, 65 F.3d 1495,

6

1500 (9th Cir. 1995)).  The "but-for" standard is plainly met here because Plaintiff's claims that

7

ANICO failed to decrease its COI rates as required by the Policy would not have incurred "but

8

for" ANICO's issuance of the Policy in California to a California resident.  *See Hirsch*, 800 F.2d

9

at 1480 ("The Hirsches claims against Blue Cross arise out of Blue Cross's alleged breach of the

10

contract to provide health care coverage to them.  Because this contract constitutes Blue Cross's

11

contacts with California, the Hirsches satisfy this element of the limited jurisdiction test."); *U.S.*

12

*Bank*, 2017 WL 5957644, at *7 ("If Defendant had never issued the Wilhelm Policy to Mr.

13

Wilhelm—a California resident—then Plaintiff could not have ultimately purchased the Wilhelm

14

Policy, Defendant would never have refused to pay Plaintiff's claim, and the instant action would

15

not have arisen."); *Flintkote Co. v. Gen. Accident Assurance Co. of Can.*, No. C 04-01827 MHP,

16

2004 WL 1977220, at *4 (N.D. Cal. Sept. 7, 2004) ("[T]he purposeful contacts—the insurance

17

policies—are the *sine qua non* prompting plaintiff's action alleging defendant's breach of

18

contractual duty in failing to defend plaintiff against the underlying asbestos claims.").

19

                        c.           Reasonableness

20

       In deciding whether an exercise of specific jurisdiction is "reasonable," the Court can

21

examine several factors, including:

22

                the extent of the defendant's purposeful interjection into the forum

23

                state's affairs; the burdens on the defendant; the forum state's
interest in adjudicating the dispute; the plaintiff's interest in
obtaining convenient and effective relief, the interstate judicial

24

                system's interest in obtaining the most efficient resolution of
controversies; and the shared interest of the several states in

25

                furthering fundamental substantive social policies.

26

*Hirsch*, 800 F.3d at 1481.  Although "a strong showing of reasonableness may lessen the required

27

showing of minimum contacts . . . once purposeful direction is documented, there exists a

28

*presumption of reasonableness*, which the defendant may rebut only by *presenting compelling*

19

United States District Court
Northern District of California

1    *reasons* why jurisdiction would be unreasonable." *Id.* (emphases added); *see also Roth v. Garcia*

2    *Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) ("Once purposeful availment has been established, the

3    forum's exercise of jurisdiction is *presumptively reasonable.*").  Therefore, because ANICO

4    purposefully availed itself of the privilege of doing business in California, *see supra* Part III.B.1.a,

5    it "bears the burden of presenting compelling reasons why jurisdiction would be unfair in this

6    instance." *Hirsch*, 800F.3d at 1481; *Roth*, 942 F.2d at 625 ("To rebut that presumption, a

7    defendant 'must present a *compelling* case' that the exercise of jurisdiction would, in fact, be

8    unreasonable." (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990)).

9        ANICO does not present any reasons, let alone "compelling reasons," why it would be

10   unreasonable for the Court to exercise personal jurisdiction in the instant case.  Nor could it, given

11   that it has both filed and defended numerous cases involving California-issued policies in

12   California federal courts.  *See e.g.*, Complaint, *Am. Nat. Ins. Co. v. Estate of Teresa Hughes*, No.

13   3:15-cv-03508-WHA (N.D. Cal. July 30, 2015), ECF No. 1 (suit for interpleader and declaratory

14   relief against insured); *Walker v. Am. Nat. Ins. Co.*, No. 4:16-cv-06255-HSG (N.D. Cal. Oct. 28,

15   2016) (ANICO defended for two years with no motion to transfer).

16       The Court therefore concludes that its exercise of specific jurisdiction over this action is

17   entirely reasonable without examining the aforementioned *Hirsch* factors.[2]

18       2.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

19       Having determined it is appropriate to exercise personal jurisdiction over Plaintiff's

20   claims, the Court can then turn to ANICO's arguments that Plaintiff failed to state a claim under

21   Rule 12(b)(6) because his claims are untimely, barred by *res judicata*, and implausible.  None of

22   these arguments has merit.

23       a.    Statute of Limitations

24       The statute of limitations for a breach of contract claim in California is four years.  *Rich v.*

25   *Shrader*, 823 F.3d 1205, 1208 (9th Cir. 2016) (citing Cal. Civ. Proc. Code § 337).  California also

26   applies the "discovery rule," whereby "a cause of action . . . accrues when . . . plaintiff either (1)

27   

28   _____
     [2] Because ANICO does not address reasonableness in its motion, it has waived any argument that
     the exercise of specific jurisdiction is unreasonable.

United States District Court
Northern District of California

actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *Bally v. State Farm Life Ins. Co.*, No. 18-CV-04954-CRB, 2019 WL 3891149, at *3 (N.D. Cal. Aug. 19, 2019) (quoting *Apr. Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (Ct. App. 1983)).  Therefore, to raise a statute of limitations defense, ANICO must establish that Plaintiff discovered—or could have discovered through the exercise of reasonable diligence—that ANICO failed to decrease the COI rates before December 18, 2016, four years before Plaintiff filed his initial complaint.

i.    <u>January 1, 2010 through December 16, 2018</u>

The FAC alleges that ANICO began deducting excessive COI charges on January 1, 2010. FAC ¶ 1.  The FAC also alleges that Plaintiff was "unaware that ANICO was engaging in wrongdoing" because (1) "[o]nly ANICO possesses its internal expectations as to future mortality experience on which COI rates are supposed to be based"; (2) "ANICO does not disclose this information to policyholders"; (3) ANICO's annual statements "conceal[ed] its internal, annually updated mortality expectations"; and (4) a reasonable policy holder would not have known of ANICO's breaches "[w]ithout disclosure by ANICO of its mortality expectations each year, or the methodology through which COI rates are being calculated and applied as compared to those new and improved mortality expectations."  FAC ¶¶ 31–32.  Based on these allegations, Plaintiff also contends in its opposition that he did not discover ANICO was deducting excessive COI charges "until he retained counsel in 2020, who in turn had actuarial experts" with access to "special NAIC filings"[3] that are only accessible with a NAIC registration and for a fee.  Opp'n at 10, 13, 13 n.5.  Therefore, according to Plaintiff, the discovery rule tolls the statute of limitations on any claims based on excessive deductions that took place between January 1, 2010 and the fall of 2020, when he discovered the factual basis for his claims.

The problem with this tolling argument is that the FAC does not include Plaintiff's allegation that he first discovered ANICO was deducting excessive COI charges from his

_____

[3] "NAIC" stands for National Association of Insurance Commissioners.  *See* FAC ¶ 3; *Financial Statement Filing & Step Through Guide*, NAIC (1991–2021), https://content.naic.org/industry_financial_filing.htm (last visited Aug. 4, 2021).

United States District Court
Northern District of California

counsel's actuarial experts in the fall of 2020. *See* Opp'n at 10, n. 3 ("This timing detail is not pleaded in the FAC."). Without this key allegation as to more precise timing, the Court cannot determine when the statute of limitations began to accrue—*i.e.*, when Plaintiff alleges he first learned ANICO was deducting excessive COI charges—for purposes of tolling the statute of limitations.

Thus, the Court dismisses any claims based on facts that took place before December 18, 2016, with leave to amend so that Plaintiff can add this allegation to plausibly allege that he discovered ANICO failed to decrease the COI rates in the fall of 2020.

ii.     December 18, 2016 to The Filing of the Complaint

ANICO also argues that all of Plaintiff's claims are barred by the statute of limitations, *including* those based on deductions of excessive COI charges that took place *after* December 18, 2016, because the statute of limitations began to accrue even before the four-year limitations period commenced. This argument is meritless for two reasons.

First, as explained in the previous section, Plaintiff contends in his opposition that he discovered ANICO was deducting excessive COI charges in the fall of 2020. If he adds that allegation to the complaint, he could plausibly plead that the statute of limitations for *all* his claims began to accrue mere months before he filed the initial complaint.

Second, and more importantly, each deduction of an excessive COI charge in violation of Plaintiff's policy constitutes a *separate breach* of contract claim for which the statute of limitations begins to accrue. Opp'n at 13. California law is clear that "[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880 (Cal. 2013) (quoting *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 2 Cal. Rptr. 3d 497, 502 (Ct. App. 2003)); *see also Jenni Rivera Enters., LLC v. Latin World Ent. Holdings, Inc.*, 249 Cal. Rptr. 3d 122, 137 (Ct. App. 2019) ("[S]uccessive causes of action for breach of contract may arise from a single contract with continuing obligations."). This "continuous accrual" doctrine applies to insurance policies because they create "a continuing obligation by the insurance company to pay benefits." *Coe v. Farmers New World Life Ins. Co.*, 257 Cal. Rptr. 411, 415 (Ct. App. 1989);

United States District Court
Northern District of California

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1399 (9th Cir. 1986) ("An insurance contract creates continuing obligations between the insurer and the insured.").  In other words, any deduction that occurred after December 16, 2018, is timely because every deduction has its own four-year statute of limitations.  *Id.*

In *Dean v. United Omaha Life Insurance*, the court applied the doctrine of continuous accrual under California law to successive breaches in a very similar COI overcharge case.  No. CV 05-6067-GHK (FMOx), 2007 WL 7079558, at *9–*11 (C.D. Cal. Aug. 27, 2007).  The plaintiff there—as here—alleged "that United ha[d] continuously violated the terms of the Policy by including expenses in the COI charge *on a monthly basis*."  *Id.* at *9 (emphasis added).  The Court rejected United's argument that the breach occurred only when United first set the COI rates at the inception of the policy because "United fails to explain why the subsequent *applications* of the inflated rate would not also constitute breaches."  *Id.* at *10.  The *Dean* court therefore held that because the plaintiff's complaint "alleges multiple breaches of contract, . . . if [the plaintiff] proves at trial that United breached the Policy within the limitations period, any such breach or breaches will not be foreclosed by the statute of limitations."  *Id.* at *11.  Other courts around the country have similarly held in COI overcharge cases.  *See e.g.*, *Adv. Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, No. 2:18-CV-1290-KOB, 2020 WL 2198955, at *4 (N.D. Ala. May 6, 2020) ("[Advance Trust's] claims survive the application of the statute of limitations . . . [because] at this stage of the litigation Advance Trust plausibly alleges that Protective Life breached a duty to review and adjust COI tables *every month*." (emphasis added)); *Fradianni v. Protective Life Ins. Co.*, 73 A.3d 896, 903 (Conn. App. Ct. 2013) ("[D]efendant charged [the plaintiff] for a cost of insurance that was in excess of the maximum amount allowed under the terms of the contract . . . . These actions, if found to be true, would constitute separate breaches . . ., several of which occurred within the statute of limitations period."); *Lee v. Allstate Life Ins. Co.*, 838 N.E.2d 15, 23 (Ill. App. Ct. 2005) ("Allstate ignores its continuous duty to abide by the terms of its insurance policies.  '[B]ecause each breach of a continuous duty has its own accrual date, a plaintiff may sue on any breach which occurred within the limitations period, even if earlier breaches occurred outside the limitation period.'" (quoting *C–B Realty & Trading Corp. v. Chi. & N. W. Ry. Co.*, 682

United States District Court
Northern District of California

N.E.2d 1136, 1140 (Ill. App. Ct. 1997))).

In the present case, Plaintiff also plausibly alleges that ANICO continuously violated the terms of the Policy by deducting excessive COI charges *on a monthly basis*. The FAC explains that "ANICO is required to *periodically* review the COI rates to confirm that they correctly reflect the insurer's current mortality expectations." FAC ¶ 3 (emphasis added). Indeed, ANICO's 2019 Annual Report to the NAIC states that "[t]he process of redetermination of nonguaranteed policy elements begins with a review of company experience. If there is a material change in expected experience, a redetermination of the rates based on the new experience factors is done." *Id.*; *see also id.* ¶ 5 ("If an annual review shows that mortality rates are projected to decline, the monthly COI rates that ANICO used to calculate the monthly COI charges must be reduced."). According to Plaintiff, this duty to adjust COI charges comes directly from "the policies at issue in this case, each of which expressly states that '*Monthly* Cost of Insurance Rates will be determined by the Company from *time to time* based on the Company's expectations as to future mortality experience.'" FAC ¶ 5 (quoting Policy at 21); *see also* Policy at 30 ("The Cost of Insurance is determined *on a monthly basis*."). Based on this duty, the FAC therefore plausibly alleges that "Plaintiff, along with numerous other ANICO policyholders, have been subjected to unlawful monthly calculations and deductions from their account value and forced to pay inflated COI charges that are not allowed by the plain language of their insurance contracts." FAC ¶ 6. In sum, as in *Dean*, Plaintiff's complaint "alleges multiple breaches of contract," such that under the continuous accrual doctrine "any such breach or breaches [that occurred after December 18, 2016] will not be foreclosed by the statute of limitations." 2007 WL 7079558, at *11.

Accordingly, the Court concludes that Plaintiff's claims based on deductions of excessive COI charges that occurred after December 16, 2018, are timely.

### b.   *Res Judicata*

"*Res judicata*, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). Claim preclusion "applies when the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on

1   the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton Electro-Optical Sys.*,

2   430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir.

3   2002)).  ANICO argues that claim preclusion bars Plaintiff's claims because he was a class

4   member in the *Albanoski* Action, a previously settled class action lawsuit against ANICO that

5   supposedly raised the same claims.  *See Albanoski v. Am. Nat. Ins. Co.*, No. 5:06-cv-02310-JF

6   (N.D. Cal. Sept. 22, 2006 ) (final judgment).  Only the first prong of claim preclusion is at issue

7   here because Plaintiff does not dispute that the second and third prongs are satisfied.

8           Claim preclusion does not bar the instant action for several reasons.  First, the plain

9   language of the *Albanoski* release does not cover Plaintiff's claims here:

10              Except for the terms of the Release discussed herein, nothing in this
            Release shall be deemed to . . . (ii) release a Class Member's right to
11          assert any claims that arise from acts, facts, or circumstances *arising
            exclusively after the end of the Class Period*.
12

13   *Albanoski*, No. 5:06-cv-02310-JF (N.D. Cal. Sept. 22, 2006) (final order approving the class

14   action settlement) at 7.  Plaintiff's claims here "arise from" ANICO's failure to adjust its COI

15   charges based on improved mortality rates, as well as its deduction of those excessive COI

16   charges, all of which occurred *after* January 1, 2010, *i.e.*, "after the end of the Class Period" in

17   *Albanoski*.  *Id.*  The *Alabanoski* release therefore does not—by its plain terms—cover the claims

18   alleged in the present case.

19          Second, a basic element of *res judicata* does not apply because the *Albanoski* Action did

20   not involve the same claims at issue here.  Both actions are based on entirely separate factual

21   predicates: the conduct alleged in the instant action began occurring on January 1, 2010, three-

22   and-a-half years *after* the *Albanoski* Action  settled on September 22, 2006.  *Compare* FAC ¶ 1,

23   *with Albanoski*, No. 5:06-cv-02310-JF (N.D. Cal. Sept. 22, 2006) (final order approving the class

24   action settlement).  The Supreme Court recently reaffirmed that "[c]laim preclusion generally

25   'does not bar claims that are predicated on events that *postdate* the filing of the initial complaint.'"

26   *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1596 (2020)

27   (emphasis added) (quoting *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292, 2305 (2016));

28   *see also Lawlor v. Nat. Screen Serv. Corp.*, 349 U.S. 322, 327–328 (1955) (holding that two suits

United States District Court
Northern District of California

were not "based on the same cause of action," because "[t]he conduct presently complained of was all subsequent to" the prior judgment").  The reasoning for this rule is that "[e]vents that occur after the plaintiff files suit often give rise to new '[m]aterial operative facts' that 'in themselves, or taken in conjunction with the antecedent facts,' create a new claim to relief."  *Lucky Brand Dungarees*, 140 S. Ct. at 1596 (quoting Restatement (Second) § 24, Comment *f*).

To be sure,

> [a] settlement agreement may preclude a party from bringing a related claim in the future "even though the claim was not presented and might not have been presentable in the class action," but only where the released claim is *"based on the identical factual predicate as that underlying the claims in the settled class action."*

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)  (emphasis added) (quoting *Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir.2008)); *see also Williams*, 517 F.3d at 1134 ("While Boeing may have drafted the settlement agreement to include as broad a release as possible, the release would have only been *enforceable* as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, but *depending upon the same set of facts.*'" (emphasis added) (quoting 5 Alba Conte & Herbert Newberg, 4 Newberg on Class Actions § 12:15 (4th ed. 2007))).  The same is true under California law.  *See Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561, at *7 (C.D. Cal. Nov. 8, 2016) ("Where the parties [are] in a continuing relationship, a previous action cannot immunize a defendant from liability for continuous or repeated misconduct." (citing *Nakash v. Sup. Ct.*, 241 Cal. Rptr. 578, 584 (Ct. App. 1987))); *Neil Norman Ltd. V. William Kasper & Co.*, 197 Cal. Rptr. 198, 202 (Ct. Ap. 1983) ("Under well settled law, the doctrine of *res judicata* does not apply where there are changed conditions and new facts which were not in existence at the time of the prior judgment, and upon which such judgment was based.").

Under this "identical factual predicate" doctrine, "numerous courts have accepted the general proposition that a class action settlement's release is unenforceable against claims predicated on the defendant's *post-settlement conduct*."  *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561, at *6 (C.D. Cal. Nov. 8, 2016) (emphasis added). *See In re Conseco Life Ins. Co. Cost of Ins. Litig.* ("*Conseco*"), No. ML 04-1610 AHM, 2005 WL

5678842, at *7 (C.D. Cal. Apr. 26, 2005) (release in *Dupell* case cannot bar claims of excessive

COI charges because they "involve actions by Defendants that first occurred years *after*

the *Dupell* settlement and that therefore could not have been asserted in the *Dupell* litigation"

(emphasis added)).

As in *Feller* and *Conseco*, the *Albanoski* settlement could not have released Plaintiff's

claims here because the claims settled in the  *Albanoski* Action depended on facts that took place

*before September 2006*, whereas the FAC alleges claims that depend on entirely different facts

that took place *after January 2010*.  Indeed, the FAC alleges not only that ANICO has been

deducting excessive COI charges since January 1, 2010, FAC ¶ 1, but that every year since 2010 it

has failed to adjust those COI charges based on reduced mortality expectations, as required by the

Policy, FAC ¶ 8 ("It is now well-documented that nationwide mortality expectations have

*improved* significantly since January 1, 2010."); *id.* ¶ 10 ("Despite these annual reviews conducted

which changed (that is, for ANICO, resulted in improved) mortality expectations every year and

corresponding decrease in mortality risk, ANICO never determined its COI rates based on its

updated, annual, refreshed mortality assumptions, which would have resulted in far lower rates

than those charged each year."); *id.* ¶ 26 ("[T]he monthly COI charges deducted during the Class

Period calculated anew each month and charged by ANICO in 2021, 2020, 2019, 2018, 2017,

2016, 2015, 2014, 2013, 2012, 2011, and 2010 were not calculated using rates based on ANICO's

then-current expectations as to future mortality experience.").  Neither the reduced annual

mortality expectations, nor ANICO's subsequent failure to reduce the COI rates based on those

expectations, existed at the time of the *Albanoski* settlement.  In the words of *Lawlor*, the

*Albanoski* release "cannot be given the effect of extinguishing claims which did not even then

exist and which could not possibly have been sued upon in [*Albanoski*]."  349 U.S. at 327–328;

*see also Hesse*, 598 F.3d at 590 ("[F]ederal district courts properly released claims not alleged in

the underlying complaint where those claims depended on the *same set of facts* as the claims that

gave rise to the settlement."); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL

613255, at *6 (N.D. Cal. Feb. 16, 2016) ("Claims based upon LinkedIn's theoretical future

conduct were not, and could not, have been asserted in this action and, thus, are outside the scope

1   of the Release.").  The present action therefore does not involve the "same claims" as *Albanoski*
2   for purposes of claim preclusion.
3          In its reply, ANICO argues that the Eleventh Circuit's recent decision in *TVPX ARS, Inc. v.*
4   *Genworth Life and Annuity Insurance Company*, 959 F.3d 1317 (11th Cir. 2020), should compel
5   this Court to conclude that the settlement in *Albanoski* covered the claims in this case.  Quite the
6   opposite.  TVPX's amended complaint—like Plaintiff's complaint here—alleged that Genworth's
7   failure to properly calculate COI charges began years *after* the settlement in the prior *McBride*
8   action.  *Id.* at 1327 ("TVPX's amended complaint alleges that from 2013 through 2018, Genworth
9   calculated COI in a way not consistent with mortality expectations.  The operative complaint *says*
10  *nothing about whether Genworth's COI charges were similarly untethered to mortality*
11  *expectations prior to the class period*." (emphasis added)).  The panel therefore vacated "[t]he
12  district court's grant of Genworth's motion to enjoin on *res judicata* grounds" and remanded for
13  further factual development precisely because "the record [was] not sufficient to support a finding
14  that Genworth's COI-related practices have *remained unchanged* since the *McBride* action."  *Id.* at
15  1324, 1328 (emphasis added).  In other words, *res judicata* did not apply because TVPX's
16  complaint did not allege that is claims against Gensworth "ar[ose] out of the *same operative*
17  *nucleus of fact*" or "*same factual predicate*, as" the claims in the *McBride* action.  Thus, if
18  anything, under *TVPX*'s reasoning, it would be an abuse of discretion for this Court to dismiss on
19  *res judicata* grounds because "the record is not sufficient to support a finding that [ANICO's] COI
20  [overcharges] have remained unchanged since the [*Alabanoski*] action."  *Id.* at 1328.
21         Accordingly, Plaintiff's claims are not barred by *res judicata*.
22                 c.     Plausibility
23         ANICO argues that Plaintiff's interpretation of the Policy is implausible because the
24  Policy's instruction that the COI charges must be "based on" mortality rates does not mean "solely
25  based on."  Mot. at 22–23.  To support this interpretation, it contends that COI rates under the
26  Policy are based on the "Company's expectations as to future mortality experience" and,
27  *separately*, "the sex, attained age, and rating class of the person insured," such that the "based on"
28  language cannot mean "based solely on."  *Id.*

United States District Court
Northern District of California

28

1    It is true that the FAC alleges that, under the Policy, "the carrier can and must consider

2    when determining monthly COI rates is 'expectations as to the future mortality experience.'

3    Nothing else." FAC ¶ 23.  It is also true that the Policy indicates that "[t]he monthly [COI] is

4    based on the sex, attained age, and rating class of the person insured,"  and, in a *separate sentence*,

5    that "[m]onthly [COI] will be determined by the Company from time to time based on the

6    Company's expectations as to future mortality experience."  Policy at 21.

7        There are two problems with this argument.  For one, Plaintiff points out that, "sex,

8    attained age, and rating class" are mortality factors that ANICO is supposed to consider when

9    establishing a given policyholder's mortality rate.  Opp'n at 24.  In other words, the mortality rate

10   is not separate from, but rather inclusive of, factors like the policyholder's sex, age, and smoking

11   status. *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 761 (8th Cir. 2020), *cert. denied*, 209

12   L. Ed. 2d 577 (Apr. 19, 2021) ("These enumerated factors are so-called 'mortality factors' because

13   they relate to a policyholder's mortality risk, which allows the insurer to determine the projected

14   mortality estimate of a policyholder based on his specific circumstances.'").  Therefore, Plaintiff's

15   allegation that the Policy requires ANICO to calculate COI rates based solely on a policyholder's

16   mortality rate can fairly be read to include, by definition, considering the policyholder's sex, age,

17   and other risk factors as part of that rate.

18       Plaintiff's proposed interpretation of the contract is reasonable.  At the very least, the

19   contract is ambiguous.  "If a contract is ambiguous, it presents a question of fact inappropriate for

20   resolution on a motion to dismiss." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir.

21   2018)).  In fact, "for [P]laintiff to survive a 12(b)(6) motion to dismiss, [P]laintiff's complaint

22   must set forth a 'reasonable interpretation'" of the contract at issue. *Glancy v. Carl Zeiss, Inc.*,

23   No. 2:15-CV-08265-CAS-KS, 2015 WL 7755995, at *4 (C.D. Cal. Nov. 30, 2015) (quoting *Klein*

24   *v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1385 (2012)).  Therefore, because Plaintiff has

25   offered an entirely reasonable interpretation of the phrase "based on," the Court cannot determine

26   at the pleadings stage that Plaintiff's reading of the Policy is implausible, let alone incorrect, as a

27   matter of law.

28       Accordingly, the Court denies ANICO's motion to dismiss Plaintiff's FAC for failure to

United States District Court
Northern District of California

state a claim pursuant to Rule 12(b)(6).

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court **DENIES** ANICO's motion to transfer.

The Court also **GRANTS in part** and **DENIES in part** ANICO's motion to dismiss as follows: (1) claims based on facts that occurred before December 18, 2016, are dismissed with leave to amend; (2) claims based on facts that occurred after December 18, 2016, are not dismissed.  Plaintiff shall have thirty (30) days from the date of this order to amend the complaint.

This order disposes of Docket Nos. 39 and 43.

**IT IS SO ORDERED**.

Dated: August 30, 2021

_____
EDWARD M. CHEN
United States District Judge