1  Steven G. Sklaver (237612)
   ssklaver@susmangodfrey.com
2  SUSMAN GODFREY L.L.P.
   1900 Avenue of the Stars, 14th Floor
3  Los Angeles, California 90067
   Telephone: (310) 789-3100
4  Facsimile: (310) 789-3150

5  Seth Ard (*pro hac vice*)
   sard@susmangodfrey.com
6  Ryan Kirkpatrick (243824)
   rkirkpatrick@susmangodfrey.com
7  SUSMAN GODFREY L.L.P.
   1301 Avenue of the Americas, 32nd Floor
8  New York, New York 10019
   Telephone: (212) 336-8330
9  Facsimile: (212) 336-8340

10 Kevin Downs (331993)
   kdowns@susmangodfrey.com
11 SUSMAN GODFREY L.L.P.
   1000 Louisiana Street, Suite 5100
12 Houston, Texas 77002
   Telephone: (713) 651-9366
13 Facsimile: (713) 654-6666

14 *Attorneys for Plaintiff*

15                **UNITED STATES DISTRICT COURT**

16               **NORTHERN DISTRICT OF CALIFORNIA**

17                 **SAN FRANCISCO DIVISION**

18

19 JOE S. YEARBY, on behalf of himself and all    Case No. 3:20-cv-09222-EMC
   others similarly situated,
20                                                **MOTION FOR PRELIMINARY**
                 Plaintiff,                       **APPROVAL OF CLASS ACTION**
21                                                **SETTLEMENT**
        v.
22                                                Date: August 10, 2023
   AMERICAN NATIONAL INSURANCE              Time: 1:30 PM
23 COMPANY,                                 Location: Courtroom 5, 17th Floor
                                                Judge: Honorable Edward M. Chen
24                 Defendant.

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on August 10, 2023, at 1:30 PM, in Courtroom 5 of the

4  United States District Court for the Northern District of California, Phillip Burton Federal Building

5  and United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable

6  Edward M. Chen presiding, Plaintiff Joe S. Yearby will and hereby does move for an order: (1)

7  preliminarily approving the proposed Settlement, plan of allocation, and the form and manner of

8  notice, and certifying the proposed Class for settlement; (2) directing notice to the Class under Rule

9  23(e)(1); and (3) scheduling a final approval hearing at which the Court will consider final approval

10  of the Settlement, final approval of the plan of allocation, and Class Counsel's motion for fees,

11  costs, and service awards.

12        This motion is based upon this Notice of Motion and Motion, the supporting Memorandum

13  set forth below, the attached declarations and exhibits, the pleadings and records on file in this

14  action, and other such matters and arguments as the Court may consider at the hearing of this

15  motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.    BACKGROUND ................................................................................................ 3

    A.    The COI Charges ................................................................................... 3

    B.    The Litigation ........................................................................................ 4

    C.    Settlement Negotiations ........................................................................ 5

    D.    The Settlement Agreement .................................................................... 5

        1.    The Settlement Class ................................................................ 5

        2.    Consideration ........................................................................... 6

        3.    Release ...................................................................................... 6

        4.    Awards, Costs, and Fees .......................................................... 7

    E.    Notice ..................................................................................................... 7

    F.    Distribution Plan ................................................................................... 8

II.   ARGUMENT ..................................................................................................... 9

    A.    The Proposed Settlement Warrants Preliminary Approval under Rule
          23(e) ....................................................................................................... 9

        1.    Legal Standard ......................................................................... 9

        2.    The Proposed Settlement Satisfies Rule 23(e)(2) and the Ninth
              Circuit's Factors ..................................................................... 11

              a)    *Plaintiff and Class Counsel Have Adequately
                    Represented the Class* ................................................ 11

              b)    *The Parties Negotiated the Settlement Agreement at
                    Arms' Length* .............................................................. 11

              c)    *The Relief Provided to the Settlement Class is Adequate* ............ 13

                    i.    The costs, risks, and delay of trial and appeal .................. 13

                    ii.   The effectiveness of any proposed method of
                          distributing relief to the class. ........................................... 16

                    iii.  The terms of any proposed award of attorneys'
                          fees. ..................................................................................... 16

          iv.     Agreements required to be identified under Rule 23(e)(3) ............................................................ 18

     d)    *The Proposal Treats All Settlement Class Members Equitably* ...................................................... 18

     e)    *Ninth Circuit Factors Not Included in Rule 23(e)(2) Favor Approval* ............................................ 19

   3.    The Proposed Class Likely Meets the Requirements for Settlement Class Certification ................................... 20

     a)    *Numerosity* ...................................................... 20

     b)    *Commonality* ................................................... 20

     c)    *Typicality* ........................................................ 21

     d)    *Adequacy* ........................................................ 22

     e)    *The Settlement Class Meets the Requirements of Rule 23(b)(3)* ................................................ 23

B.    The Proposed Form and Manner of Notice is Appropriate ................................... 24

C.    Proposed Schedule for Notice, Objections, and Final Approval ........................ 25

III.    CONCLUSION ................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*,
  15-cv-9924 (PGG), Dkt. 164 (S.D.N.Y. Mar. 18, 2019) ............................................. 2, 14, 22

*37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*,
  15-cv-9924 (S.D.N.Y.) ............................................................................................................ 15

*Amador v. Baca*,
  2:10-cv-1649, 2020 WL 5628938 (C.D. Cal. Aug. 11, 2020) .................................. 15, 19, 20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................................ 23

*Betorina v. Randstad US, L.P.*,
  No. 15-CV-03646-EMC, 2017 WL 1278758
  (N.D. Cal. Apr. 6, 2017) (Chen, J.) ........................................................................................ 14

*Boyd v. Bank of Am. Corp.*,
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ........................................................................ 17

*Chen v. Chase Bank USA, N.A.*,
  No. 19-CV-01082-JSC, 2020 WL 264332 (N.D. Cal. Jan. 16, 2020) .................................... 10

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................................. 10

*Cortez v. United Nat. Foods, Inc.*,
  No. 18-CV-04603-BLF, 2020 WL 13526688
  (N.D. Cal. Feb. 6, 2020) .......................................................................................................... 16

*Cotter v. Lyft, Inc.*,
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ...................................................................................... 9

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................................ 15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................................................. 11, 22

*Evans v. Wal-Mart Store, Inc.*,
  2020 WL 886932 (D. Nev. Feb. 24, 2020) .............................................................................. 10

*Feller v. Transamerica Life Ins. Co.*,
  2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) .................................................................... 21, 23

*Fernandez v. Victoria Secret Stores, LLC*,
    2008 WL 8150856 (C.D. Cal. July 21, 2008) ............................................................. 17

*Fleisher v. Phoenix Life Ins. Co.*,
    11-cv-8405 (S.D.N.Y.) .................................................................................................. 15

*Fleisher v. Phoenix Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................................................... *passim*

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
    330 F.R.D. 374 (S.D.N.Y. 2019) ............................................................................ 20, 21

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 4207245
    (N.D. Cal. Sept. 4, 2018) ............................................................................................. 16

*In re AXA Equitable Life Ins. Co. COI Litig.*,
    2020 WL 4694172 (S.D.N.Y. Aug. 13, 2020) ........................................................ 20, 23

*In re Banc of Cal. Secs. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ............................................................ 17

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................... 20, 21

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................ 12

*In re Lloyd's Am. Tr. Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......................................................... 16

*In re Mego Fin. Corp. Secs. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................................... 14

*In re Portal Software, Inc. Securities Litigation*,
    No. C–03–5138 VRW, 2007 WL 4171210
    (N.D. Cal. Nov. 26, 2007) ...................................................................................... 15, 20

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg.
    & Sales Pracs. Litig.*,
    No. 5:09-MD-02015-JF, 2011 WL 1877630
    (N.D. Cal. May 17, 2011) ............................................................................................ 24

*In re YayYo, Inc.*,
    2022 WL 423390 (C.D. Cal. Jan. 13, 2022) ................................................................. 9

*James v. Uber Techs. Inc.*,
    338 F.R.D. 123 (N.D. Cal. 2021) (Chen, J.) ......................................................... 21, 22

*Kastler v. Oh My Green, Inc.*,
   No. 19-CV-02411-HSG, 2021 WL 3604714
   (N.D. Cal. Aug. 13, 2021) ...................................................................................... 10, 15, 18, 19

*Leonard v. John Hancock Life Ins. Co.*,
   18-cv-04994 (S.D.N.Y.) ..................................................................................................... 15

*Marolda v. Symantec Corp.*,
   No. 08-CV-05701 EMC, 2013 WL 12310821
   (N.D. Cal. Apr. 5, 2013) (Chen, J.) .................................................................................. 19

*McLeod v. Bank of Am., N.A.*,
   No. 16-CV-03294-EMC, 2019 WL 1170487
   (N.D. Cal. Mar. 13, 2019) (Chen, J.) ............................................................................... 17

*Meek v. Kansas City Life Ins. Co.*,
   19-cv-472, Dkt. 311, 329-30
   (W.D. Mo. May 25 & June 20, 2023) .................................................................................. 3

*Nightingale v. U.S. Citizenship & Immigr. Servs.*,
   333 F.R.D. 449 (N.D. Cal. 2019) ...................................................................................... 20

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................. 12

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ..................................................................................... 10, 12

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ...................................................................................... 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................. 10

*Stuart v. Radioshack Corp.*,
   No. C-07-4499 EMC, 2010 WL 3155645
   (N.D. Cal. Aug. 9, 2010) (Chen, J.) ............................................................................ 12, 17

*Taylor v. Shippers Transp. Express, Inc.*,
   2015 WL 12658458 (C.D. Cal. May 14, 2015) ............................................................ 12, 21

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ........................................................................................... 23

*Vogt v. State Farm Life Ins. Co.*,
   963 F.3d 753 (8th Cir. 2020) ............................................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................... 11, 21, 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Yearby v. American National Ins. Co.*,
   3:20-cv-09222 (N.D. Cal.) ................................................................................................. 15

**Statutes**

Class Action Fairness Act, 28 U.S.C. §1715 ................................................................. 8

**Rules**

Fed. R. Civ. P. 15(a)(1) ................................................................................................. 4

Fed. R. Civ. P. 23 ...............................................................................................*passim*

1    Plaintiff Joe S. Yearby, individually and on behalf of the proposed Class,[1] has entered into

2  a settlement agreement (the "Settlement" or "Settlement Agreement") with Defendant American

3  National Insurance Company ("ANICO"). Pursuant to Rule 23 of the Federal Rules of Civil

4  Procedure, Plaintiff respectfully moves the Court for an order:

5        • Preliminarily approving the proposed Settlement, plan of allocation, and the form

6          and manner of notice, and certifying the proposed Class for settlement.

7        • Directing notice to the Class under Rule 23(e)(1).

8        • Scheduling a final approval hearing at which the Court will consider final approval

9          of the Settlement, final approval of the plan of allocation, and Class Counsel's

10         motion for fees, costs, and service awards.

11  The Settlement, if approved, will conclude this class litigation in its entirety.

12                                   **INTRODUCTION**

13    After over two years of hard-fought litigation and months of arm's-length negotiations with

14  the assistance of an experienced mediator, the Honorable Vaughn Walker (Ret.), Plaintiff and

15  ANICO agreed to settle this complex insurance class action for the outstanding amount of a cash

16  payment equal to 88% of the alleged COI overcharges at issue in the litigation, and additional non-

17  cash relief. The settlement provides the following monetary and non-monetary benefits to the

18  owners of the 3,090 policies in the Class:

19        • **CASH.** A $5 million cash payment, reduced for post-settlement opt-outs. This is not

20          a claims-made settlement; checks will be mailed directly to Class members without

21          requiring them to submit proof of their claim, using ANICO's records, and

22          settlement funds do not revert to ANICO.

23        • **CLASS COI RATE SCHEDULE INCREASE FREEZE.** A freeze on any cost of

24          insurance ("COI") rate scale increase for five additional years. Thus, even if ANICO

25          has a future change in cost factors that it contends would otherwise permit a COI

26          rate increase under the terms of the policies—including any surge in mortality

27

28  _____
[1] Unless otherwise noted, all Capitalized Terms mean the same as in the Settlement Agreement, which is attached as Exhibit 2 to the Declaration of Steven Sklaver.

1    ANICO might claim due to the COVID-19 pandemic—ANICO will not increase

2    COI rate scales for 5 years following Final Approval. Policyholders now have the

3    ability to predict, with certainty, what their COI obligations will be for a substantial

4    period of time.

5    • **<u>VALIDITY STIPULATION & STOLI WAIVER.</u>** As part of the Settlement,

6    ANICO has agreed not to challenge the validity and enforceability of any eligible

7    policies owned by participating Class members on the grounds of lack of an

8    insurable interest, stranger originated life insurance ("STOLI"), or

9    misrepresentations in the application for such policies.

10   The cash portion of the settlement fund, by itself, represents the recovery of an astounding

11   88% of alleged historical damages as of February 28, 2023.  On a percentage basis, this exceeds

12   even the result obtained on the eve of trial in the *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL

13   10847814, (S.D.N.Y. Sept. 9, 2015) COI class action, which Judge McMahon in the Southern

14   District of New York declared "one of the most remunerative settlements this court has ever been

15   asked to approve." *Id.* at *10-11 (granting final approval to a COI class action settlement with a

16   cash award amount equal to 68.5% of past damages); *see also* Transcript at 3:8-11, *Fleisher*, No.

17   11 Civ. 8405 (S.D.N.Y. Sep. 24, 2015), Dkt. 319 (hearing transcript in which Judge McMahon

18   praised the result as "superb" and "the best settlement pound for pound for the class that I've ever

19   seen"). It also provides a better recovery for the class than another COI settlement that a court

20   recently described as "quite extraordinary." *See 37 Besen Parkway, LLC v. John Hancock Life Ins.*

21   *Co.*, 15-cv-9924 (PGG), Dkt. 164 at 20:10 (S.D.N.Y. Mar. 18, 2019) ("*Hancock COI*") (approving

22   COI class settlement with cash fund equal to 42% of overcharges and no quantified non-monetary

23   benefits). The non-cash component of the Settlement adds even more value to the Class, including

24   non-monetary value that the class could not have obtained even with a trial victory. *See* Declaration

25   of Steven Sklaver ("Sklaver Decl.") ¶¶ 11–12.

26   Particularly given the costs, delays, and inherent uncertainty of litigation, this result is

27   excellent. The Class will get extensive cash and other benefits, obviating the substantial risks that

28   Plaintiff faces at trial—the risk of zero recovery or recovery of far less than what Plaintiff seeks.

*See, e.g.*, Sklaver Decl., ¶ 3 & Exs. 5–6 (judgment in recent COI class action trial, *Meek v. Kansas City Life Ins. Co.*, 19-cv-472, Dkt. 311, 329-30 (W.D. Mo. May 25 & June 20, 2023), where the Class sought $18 million but recovered less than $1 million (*i.e.*, less than 6%), and partial decertification granted post-trial). Class Counsel recommends this Settlement to the Court after investing significant effort in this litigation, obtaining and analyzing over 18,000 pages of documents in discovery (including historical charge data and mortality expectations for all 3,090 policies in the Class), working extensively with liability and damages experts, and briefing case-dispositive motions. The arm's-length settlement negotiations were also extensive: the parties attended two separate mediation sessions each conducted by Judge Walker. The support of the Settlement's terms by Plaintiff, Class Counsel and the Mediator is further testimony to the fairness of the Settlement.

At the preliminary approval stage, the Court considers whether it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). For the reasons provided herein, the proposed Settlement meets both criteria.

## I.    BACKGROUND

### A.    The COI Charges

The Class consists of owners of over 3,000 universal life insurance policies ("Class Policies"), issued by ANICO in California.[2] Each Class Policy contains a section titled "Cost of Insurance Rate" with requirements governing how COI rates will be determined by ANICO based on its expectations as to future mortality experience. Plaintiff's policy, which is representative of the language included in all Class Policies, states in relevant part:

---

[2] Specifically, the Class is "[a]ll owners of universal life (including variable universal life) insurance Policies issued in California by American National Insurance Company, or its predecessors in interest, that provide that cost of insurance rates are determined based on expectations as to future mortality experience, and that were subjected to monthly cost of insurance deductions on or after January 1, 2010," with the exclusion of "Class Counsel and their employees; American National; officers and directors of American National, and members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court, the Court's staff, and their immediate families." *See* Settlement Agreement § 5.

1
2
3

> The monthly Cost of Insurance rate is based on the sex, attained age, and rating class of the person insured. Attained age means the Insured's age last birthday on the previous Policy anniversary. Monthly Cost of Insurance Rates will be determined by the Company from time to time based on the Company's expectations as to future mortality experience.

4

*See* Sklaver Decl., Ex. 3 (Yearby Policy) at 12.

5

### B.    The Litigation

6

In December 2020, Plaintiff filed a class action lawsuit, asserting a claim of breach of

7

contract against ANICO. Dkt. 1. ANICO moved to transfer venue to the Southern District of Texas

8

and to dismiss based on lack of personal jurisdiction, res judicata, and failure to state a claim. Dkt.

9

25-28. Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff filed a First Amended

10

Complaint ("FAC") on April 23, 2021. Dkt 31. ANICO moved to dismiss the FAC on similar

11

grounds as the original complaint, and also filed its renewed motion to transfer the action. Dkts.

12

43-44. Plaintiff opposed the motions, Dkts. 46-47, and conducted jurisdictional discovery. Sklaver

13

Decl. ¶ 5. After hearing oral argument, the Court denied the motion to transfer and granted in part

14

and denied in part the motion to dismiss, allowing Plaintiff to amend his tolling allegation. Dkt. 57.

15

Plaintiff did so by filing a Second Amended Complaint ("SAC"). Dkt. 61. ANICO did not move

16

to dismiss the SAC, and instead served its Answer. Dkt. 69.

17

After an unsuccessful first mediation on February 16, 2022, which was conducted at the

18

suggestion of the Court, *see* Dkt. 41 at 2 (setting ADR deadline and limiting discovery until after

19

the completion of ADR), the parties engaged in fact discovery, which included the service of 41

20

Requests for Production of documents, extensive negotiation over the scope of production and ESI

21

protocol, and production and review of over 18,000 pages of documents and data sets, including

22

documents produced pursuant to third-party subpoenas served on ANICO's independent auditors,

23

Deloitte & Touche LLP and KPMG LLP, following numerous meet and confer efforts with both

24

the auditors and ANICO. *See* Sklaver Decl. ¶¶ 4–6. Plaintiff also served a Rule 30(b)(6) deposition

25

notice on ANICO and, following ANICO's objections to the notice, engaged in meet and confer

26

efforts over the scope of the topics shortly before the parties reached an agreement on settlement.

27

Sklaver Decl. ¶ 6.

28

---

### C.    Settlement Negotiations

The Settlement is the result of extensive, arms-length negotiations between the parties with the assistance of an experienced mediator, Vaughn R. Walker, a retired United States District Judge. *See* Sklaver Decl. ¶ 7; Declaration of Vaughn R. Walker ("Walker Decl.") ¶¶ 5–9. Through the life of the case, the parties have exchanged numerous settlement offers and counter-offers and engaged in an unsuccessful mediation on February 16, 2022, in person in San Francisco. *See* Sklaver Decl. ¶ 8. Following extensive document and third-party discovery, the parties renewed mediation discussions in September 2022 and on November 22, 2022, the parties attended another mediation which resulted in agreement for a final settlement. Walker Decl. ¶ 6–7. The parties then informed the Court of the development. Dkt. 76. A long-form settlement agreement was heavily negotiated and agreed to thereafter. *See* Sklaver Decl. ¶ 8, Ex. 2 (Settlement Agreement).

Throughout the process, the settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. *See* Sklaver Decl. ¶ 9; Walker Decl. ¶ 8. Class Counsel was well informed of material facts and the negotiations were hard-fought and non-collusive. *See id.* ¶¶ 7–9. Class Counsel analyzed all of the contested legal and factual issues to thoroughly evaluate ANICO's contentions, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class, and each side demonstrated a willingness to continue to litigate rather than accept a settlement that was not in the best interest of their clients. *See id.*

### D.    The Settlement Agreement

#### 1.    The Settlement Class

The Settlement Agreement provides for a Settlement Class of "[a]ll owners of universal life (including variable universal life) insurance Policies issued in California by American National Insurance Company, or its predecessors in interest, that provide that cost of insurance rates are determined based on expectations as to future mortality experience, and that were subjected to monthly cost of insurance deductions on or after January 1, 2010," with the exclusion of the policies that timely and validly opt out during the Rule 23(e)(4) opt-out period (referred to as the "Opt-

Outs" in the Settlement Agreement). *See* Settlement Agreement §§ 5, 29.[3] The awards and releases in the Settlement Agreement apply only to the Settlement Class.

### 2.    Consideration

The Settlement awards both cash relief and non-cash relief to the Settlement Class. With respect to the cash relief, a $5 million Settlement Fund will be funded for the benefit of the Settlement Class. *See* Settlement Agreement §§ 38, 43. This amount will be reduced, on a *pro-rata* basis measured by the face amount for each policy that timely and validly opts out during the Rule 23(e)(4) opt-out period. *See id.* § 44.[4] No portion of the Final Settlement Fund (*i.e.* the post-reduction amount) will revert back to ANICO. *See id.* §§ 39, 44.

The Settlement Agreement also provides two forms of significant non-cash relief. *First*, for a period of five years after the date on which the Court approves the settlement, "American National agrees that Current COI Rate Scales for the Class Policies will not be increased." *See* Settlement Agreement § 48. *Second*, "American National agrees to not take any legal action (including asserting as an affirmative defense or counter-claim), or cause to take any legal action, that seeks to void, rescind, cancel, have declared void, or seeks to deny coverage under or deny a death claim for any Class Policy based on:  (1) an alleged lack of valid insurable interest under any applicable law or equitable principles; or (2) any misrepresentation allegedly made on the application for, or otherwise made in applying for the policy" *Id.* § 49. As set forth in the accompanying Declaration of Keith McNally, an expert with extensive experience in the life insurance industry and with longevity-based products, the value of the nonmonetary relief made available to potential Class Members is $362,289. *See* Declaration of Keith McNally ("McNally Declaration") ¶ 11.

### 3.    Release

Once the settlement becomes final, the Settlement Class and certain related parties (referred to as the "Releasing Parties" in the Settlement Agreement) will release ANICO, certain related

---

[3] In addition, the Settlement Class will exclude Class Counsel and their employees; ANICO; officers and directors of ANICO, and members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court, the Court's staff, and their immediate families. *See id.* § 5.

[4] For example, "if 1% of the total face amount of the in-scope policies owned by members of the Class is attributable to Opt-Outs, the Settlement Fund will be reduced by 1% (i.e., to $4,950,000)." *See id.*

parties (referred to as the "Released Parties" in the Settlement Agreement) from "all Claims, from whatever jurisdiction, arising out of or related to any Policy, or Policies, that were alleged or could have been alleged in the Action arising out of the same Factual Predicate as that alleged in the Action and/or as clarified herein." Settlement Agreement §§ 30–32, 66. Expressly excluded from this release are claims arising from (i) future COI rate scale increases (after the 5 year COI rate freeze expires), (ii) other future increases to policy charges or credits that could not have been asserted in this action, or (iii) any failure to pay any death benefits that may be owed. *Id.* §§ 15, 72.

### 4.    Awards, Costs, and Fees

The Settlement provides, subject to Court approval, for a service award of up to $25,000 for Plaintiff Joe Yearby for his services on behalf of the Settlement Class. *See* Settlement Agreement §§ 21, 59. The Settlement Agreement also provides notice that Class Counsel will move the Court for approval for attorneys' fees in an amount not to exceed 33 1/3% of the gross benefits provided to the Settlement Class and reimbursement for all expenses incurred or to be incurred. *See id.* §§ 60–61. The amounts as approved by the Court will be paid out of the Final Settlement Fund. *See id.* §§ 19, 21, 47, 60–61.

Class Counsel will file a motion seeking reimbursement of their costs, fees, and service awards, which will be proposed to be heard at the same time as the final approval hearing. Class members will be given an opportunity to object to that application prior to the final approval hearing. No such costs, fees, or awards will be distributed without Court order.

### E.    Notice

Plaintiff requests that the Court approve the proposed notice plan described in paragraphs 16–21 of the Sklaver Declaration and paragraphs 10–25 of the Declaration of Gina Intrepido-Bowden ("Bowden Decl."), which provides that within 14 days of the Court's order granting the motion for preliminary approval, ANICO will provide JND with a list of owner-address information that is available from their files. *See* Sklaver Decl. ¶ 16–21. Within 30 days after the motion for preliminary approval is granted, JND will mail the short-form notice attached as Exhibit A to the Bowden Declaration to all addresses on the list from ANICO. *See* Sklaver Decl. ¶ 18; Bowden

1   Decl. ¶¶ 17–19.[5] JND will also post a copy of the long-form notice attached as Exhibit B to the

2   Bowden Declaration to a website that will be established for the settlement and will establish and

3   maintain an automated toll-free number that Class Members may call to obtain information about

4   the litigation. *See* Bowden Decl. ¶¶ 20–23. Class Members who wish to be excluded from the

5   Settlement Class must send a letter to JND requesting exclusion that is postmarked no later than 45

6   days after the Notice Date. *See* Sklaver Decl. ¶ 20; Bowden Decl., Exs. A–B.[6]

7       Within 10 days following the filing of this motion, ANICO shall serve notices of the

8   proposed Settlement upon the appropriate officials in compliance with the requirements of the Class

9   Action Fairness Act, 28 U.S.C. §1715. *See* Settlement Agreement § 57.

10      **F.    Distribution Plan**

11      The proposed plan of allocation, as set forth in the notice papers and which is described in

12  Exhibit 4 to the Sklaver Declaration, distributes proceeds directly to Class Members on a *pro rata*

13  basis without the need for a claim form. This ensures that proceeds will be distributed equitably

14  and that as many claimants as possible will receive a distribution. Each Class Member's *pro rata*

15  share shall be that Class Member's share of the total damages, with each Class Member receiving

16  a minimum distribution of $100. *See* Sklaver Decl., Ex. 4. Those damages will be determined in

17  accordance with the Declaration of Robert Mills, which determines the COI Overcharge for a

18  Policy as the difference between the COI charges actually assessed on the Policy from January 1,

19  2010 to February 28, 2023, and the COI charges that would have been deducted from the policy

20  accounts under Plaintiff's theory of liability. *See* Sklaver Decl., Ex. 4; Mills Declaration ¶¶ 9–10.

21  All in-force policies will also benefit from the guarantee of policy validity and the five-year COI

22  freeze.

23      Class members will not need to fill out claim forms. Money will be sent to them

24  automatically in the mail, using the addresses that ANICO maintains on file. Proceeds will be

25

26  _____
    [5] Prior to mailing, JND will update the addresses using the National Change of Address database.
27  *See* Bowden Decl. ¶ 18. JND will re-mail any short-form notices returned by the United States
    Postal Service with a forwarding address. *See id.*
28  [6] The complete instructions for requesting exclusion are included in the long-form notice. *See*
    Bowden Decl., Ex. B.

mailed within 30 days after the Final Settlement Date. *See* Sklaver Decl., Ex. 4.[7] Within one year plus 30 days after the date the Settlement Administrator mails the proceeds, to the extent feasible and practical in light of the costs of administering such subsequent payments, any funds remaining in the Settlement Fund shall be re-distributed on a *pro rata* basis to Class Members who previously cashed their checks. *See* Sklaver Decl., Ex. 4.

**II.    ARGUMENT**

**A.    The Proposed Settlement Warrants Preliminary Approval under Rule 23(e)**

**1.    Legal Standard**

Rule 23(e) requires court approval for a class action settlement. There is a "two-step process for the approval of class action settlements: 'the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.'" *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016). "Preliminary approval of a class settlement is warranted when it is sufficiently likely that a court will be able to grant final approval of the settlement" because the court determines that the settlement is "fair, reasonable, and adequate" after considering the factors outlined in Rule 23(e)(2). *In re YayYo, Inc.*, 2022 WL 423390, at *1 (C.D. Cal. Jan. 13, 2022). These factors include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

---

[7] The Settlement Agreement defines the Final Settlement Date as "the latest of: (i) the date of final affirmance on any appeal of the Order and Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Order and Judgment; or (iii) if no appeal is filed, the expiration of the time for filing or noticing any form of valid appeal from the Order and Judgment." *See* Settlement Agreement § 18.

Courts may also consider additional factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

In this Circuit, "[t]here is a strong judicial preference for pre-trial settlement of complex class actions as settlement of class actions is favored as a matter of 'strong judicial policy.'" *Evans v. Wal-Mart Store, Inc.*, 2020 WL 886932, at *1 (D. Nev. Feb. 24, 2020). In approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (cleaned up). "Preliminary approval is thus appropriate where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Chen v. Chase Bank USA, N.A.*, No. 19-CV-01082-JSC, 2020 WL 264332, at *6 (N.D. Cal. Jan. 16, 2020) (internal quotation removed).

Class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* "Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714, at *7 (N.D. Cal. Aug. 13, 2021).

**2.      The Proposed Settlement Satisfies Rule 23(e)(2) and the Ninth Circuit's Factors**

a)      *Plaintiff and Class Counsel Have Adequately Represented the Class*

To determine adequacy of representation, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (cleaned up).

Plaintiff shares the same interest as the Settlement Class in prosecuting this action to ensure the greatest possible recovery from ANICO. Plaintiff is part of the Settlement Class and suffered the same injuries as other Settlement Class Members: monetary losses associated with COI overcharges. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members) (citation and internal quotation marks omitted).

Further, Class Counsel have demonstrated that they are qualified, experienced, and able to conduct the litigation and supervise the Settlement.  The result of Plaintiff's and Class Counsel's efforts is a recovery of 88% of the total alleged damages as of February 28, 2023, *plus* additional non-monetary relief valued at $362,289 that could not have been obtained at trial. The cash will be distributed equally on a *pro rata* basis, with each Class Member receiving a minimum distribution of $100. All Class Members share an overriding interest in obtaining the largest monetary recovery possible. *See* 1 Newberg on Class Actions § 3:58 (6th ed. 2022) (adequacy "as the phrase 'absence of conflict' suggests—is such sufficient similarity of interest that there is no affirmative antagonism between the representative and the class").

Plaintiff's interests continue to be aligned with other Class Members, and Plaintiff and Class Counsel have continued to vigorously and competently litigate this case past motions to dismiss and transfer venue, through fact discovery, and mediation. *See* Sklaver Decl. ¶¶ 5–9. Rule 23(e)(2)(A) therefore supports approval.

b)      *The Parties Negotiated the Settlement Agreement at Arms' Length*

In the Ninth Circuit, a strong presumption of fairness attaches to a class action settlement

---

1    reached through "arms-length, non-collusive" negotiations with experienced and well-informed
2    counsel. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also Taylor v.*
3    *Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("A
4    settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."
5    (citation omitted)).

6          Here, the settlement is the result of repeated and hard-fought arms'-length negotiations
7    among competent, experienced counsel and a mediator with extensive experience in complex
8    litigation, class actions, and insurance issues. *See* Sklaver Decl. ¶¶ 7–9; Walker Decl. ¶¶ 5–9. Rule
9    23(e)(2)(B) therefore supports approval. If the Court is satisfied that the Settlement was negotiated
10   at arm's length, it will "afford the parties the presumption that the settlement is fair and reasonable."
11   *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324 (C.D. Cal. 2016); *see also In re Heritage Bond*
12   *Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said
13   to attach to a class settlement reached in arm's length negotiations between experienced capable
14   counsel after meaningful discovery." (cleaned up).

15         Moreover, none of the signs that courts consider when evaluating pre-certification
16   settlements for collusion are present here.  The Ninth Circuit has articulated that the relevant signs
17   are "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties
18   negotiate a clear sailing arrangement (i.e., an arrangement where defendant will not object to a
19   certain fee request by class counsel); and (3) when the parties create a reverter that returns
20   unclaimed [funds] to the defendant." *Roes*, 944 F.3d at 1049 (cleaned up). Class Counsel will not
21   receive a disproportionate distribution of the settlement, as attorneys' fees will be limited to 33
22   1/3 % of the gross benefits provided to the Settlement Class, which is in line with other approved
23   fee awards. *See, e.g.*, *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6
24   (N.D. Cal. Aug. 9, 2010) (Chen, J.) (awarding class counsel one-third of the total settlement amount,
25   which was "well within the range of percentages which courts have upheld as reasonable in other
26   class action lawsuits"). Nor is there any agreement for ANICO not to object to Class Counsel's fee
27   request. And the settlement is a non-reversionary fund—any unclaimed amounts will be re-
28   distributed to class members who cashed the first round of checks. *See* Sklaver Decl., Ex. 4.

c)     *The Relief Provided to the Settlement Class is Adequate*

Rule 23(e)(2)(C) requires that "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

i.     *The costs, risks, and delay of trial and appeal*

In order to assess adequacy under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23, 2018 Advisory Note, Paragraphs (C) and (D).

Here, there are substantial risks of establishing liability and damages. Plaintiff believes the case is strong on the merits, but ANICO has challenged the merits of Plaintiff's claims.  For example, ANICO has argued that the "based on" language in the Class Policies' COI provision does not mean based "solely" on, and allows ANICO to calculate COI charges to include factors other than only its expectations as to future mortality experience.  ANICO has also argued that the policies do not require it to reassess COI rates at any specific time, and it has challenged the variables used in Plaintiff's damages model. And ANICO has argued that a release from a prior class action bars Plaintiff's claims in this case. Moreover, this case involves complicated actuarial issues that courts have labeled "indisputably complex," and both liability and damages would likely come down to dueling expert opinions about actuarial standards, insurance principles, technical actuarial assumptions, documents, and data. As Judge McMahon explained in another COI case:

> The complaint alleged the breach of an insurance contract, the resolution of which would require conflicting testimony by experts as to actuarial standards, the original and revised pricing assumptions used by Phoenix for the PAUL insurance products at issue, and what it means to "recoup past losses" or "discriminate unfairly" within a "class" of insured. These complex claims were bitterly fought, as Defendants developed defenses to liability, damages, and class certification, and offered their own expert opinions on actuarial issues for the key questions. The court has issued opinions of great length of complexity in connection with motions to dismiss and for summary judgment.

*Fleisher,* 2015 WL 10847814, at *6.

The same is true here. For example, even if Plaintiff were to prevail on liability, damages

1    would be hotly contested. Plaintiff's claimed damages are calculated by taking the COI charges

2    that were actually deducted from policyholder accounts using actual COI rates, and subtracting the

3    COI charges that would have been charged if ANICO had used the but-for COI rates that Plaintiff

4    alleges should have been determined "based on [ANICO's] expectations as to future mortality

5    experience." *See* Sklaver Decl., Ex.3 at 12; Mills Decl. ¶¶ 9–10. The correctness of those but-for

6    COI rates will be the subject of extensive, competing expert testimony about the correct actuarial

7    assumptions to use and the reasonableness of the but-for redetermination methodology.

8        In addition to avoiding all of these risks, the Settlement provides $5 million in cash benefits

9    to the Settlement Class (on a pre-opt out basis), which is approximately 88% of the Settlement

10   Class's alleged damages as of February 28, 2023 under Plaintiff's overcharge methodology. Mills

11   Decl. ¶ 12. This settlement-to-damages ratio exceeds the amount obtained in *Fleisher*, which the

12   Court called "one of the most remunerative settlements this court has ever been asked to approve,"

13   *Fleisher,* 2015 WL 10847814, at **10-11, as well as the 42% recovery obtained in *Hancock COI*.

14   It also is well in excess of settlements that have been approved in this Circuit. *See, e.g.*, *In re Mego

15   Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming approval of settlement worth

16   "roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is

17   fair and adequate"); *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758,

18   at *8 (N.D. Cal. Apr. 6, 2017) (Chen, J.) (approving settlement value that was "49% of the

19   calculated damages estimated by Plaintiffs"). A chart of settlement outcomes for three other COI

20   cases in which Class Counsel has been involved for which final approval has been granted,

21   compared to Plaintiff's proposed settlement with ANICO, is provided in the summary chart below.[8]

22

23

24

---

25   [8] A more detailed chart of comparable outcomes in COI class action settlements, based on the
     factors listed in the Northern District of California's Procedural Guidance for Class Action

26   Settlements, is included in the declaration of Steven Sklaver. *See* Sklaver Dec. ¶ 3 & Ex. 7. The
     class size and preliminary settlement fund information provided for in this chart is as of the time of

27   preliminary approval. The final class size and final settlement fund in the identified actions
     changed after preliminary approval, depending on the number of opt-outs, but the percentage of

28   total overcharges did not change because the reduction of the preliminary settlement funds were
     computed on a *pro-rata* basis also tied to overcharges.

| Case Title | Class Size (number of policies) | Preliminary Settlement Fund | Percentage of Total Overcharges |
|---|---|---|---|
| *Fleisher v. Phoenix Life Ins. Co.*, 11-cv-8405, (S.D.N.Y.) | 1,728 | $42.5MM | 68.5% |
| *37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*, 15-cv-9924, (S.D.N.Y.) | 79,033 | $91.25MM | 42% |
| *Leonard v. John Hancock Life Ins. Co.*, 18-cv-04994, (S.D.N.Y.) | 1,278 | $123.07MM | 91.25% |
| *Yearby v. American National Ins. Co.*, 3:20-cv-09222 (N.D. Cal.) | 3,090 | $5MM | 88% |

This Settlement also avoids the enormous costs and delays associated with pursuing a judgment at trial. Given the complexities and expert witness issues described above, COI cases are extraordinarily expensive to try. Sklaver Decl. ¶ 9.  Given that the total alleged historical damages through February 28, 2023 are only $5,704,128, there is a serious risk that expenses would severely diminish the distributions that the class would ultimately receive, if this case were to proceed to trial. Further, given the stage of this case, a jury verdict remains at least a year away, and will then face a long appellate process that would have significantly delayed any substantive relief. *Amador v. Baca*, 2:10-cv-1649, 2020 WL 5628938, at *3 (C.D. Cal. Aug. 11, 2020) (noting that "the possibility that any final judgment would lead to reversal on appeal" was a factor favoring approval); *In re Portal Software, Inc. Securities Litigation*, No. C–03–5138 VRW, 2007 WL 4171210, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

It would likely not be until *after* any appeals that any Class Member could even hope to receive any damages for their claim.  Yet, the Settlement provides for $5 million in settlement cash benefits, including cash for the Settlement Class and additional noncash benefits, and each Settlement Class Member is assured significant relief without needing to file a claim. The Settlement removes substantial uncertainties about Plaintiff's chances of success and recovery, and *guarantees* relief.  This factor supports approval because, "without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014).  *See also Kastler*, 2021 WL 3604714, at *9–10 (under the heightened scrutiny standard for pre-certification settlements, a settlement amount representing

only "a fraction of Defendant's potential statutory damages exposure" was "within the range of possible approval" due to the case's complexities).

          *ii.    The effectiveness of any proposed method of distributing relief to the class.*

The second Rule 23(e)(2)(C) subfactor takes into account "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994)).

Plaintiff's proposed plan of allocation provides for a *pro rata* distribution of proceeds with each Class Member receiving a $100 minimum distribution, without any claim form or process. *See* Sklaver Decl., Ex. 4. A plan that distributes funds on a *pro-rata* basis "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel" to be approved. *See Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2020 WL 13526688, at *8 (N.D. Cal. Feb. 6, 2020) (quoting *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014)). "This type of distribution, where funds are distributed on a *pro rata* basis, has frequently been determined to be fair, adequate, and reasonable." *Fleisher*, 2015 WL 10847814, at *12 (collecting cases); *see also In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("[P]ro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits.").

          *iii.    The terms of any proposed award of attorneys' fees.*

The third Rule 23(e)(2)(C) subfactor takes into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the Settlement Agreement provides that "Plaintiff will move for attorneys' fees not to exceed 33 1/3% of the gross benefits provided to the Settlement Class" and "reimbursement for all expenses incurred or to be incurred," which will be deducted from the Final Settlement Fund. *See* Settlement

1   Agreement § 60. The payment will be made "immediately upon entry of an order approving such

2   fees and expenses, or at a later date if required by the Court." *Id.* Awards of this magnitude have

3   been deemed reasonable in comparable class actions. *See In re Banc of Cal. Secs. Litig.*, 2020 WL

4   1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding Lead Counsel 33% of the settlement); *Boyd v.*

5   *Bank of Am. Corp.*, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding 33.3%); *Stuart*,

6   2010 WL 3155645, at *6 (awarding class counsel one-third of the total settlement amount");

7   *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008)

8   (awarding 34%).

9       Plaintiff will submit detailed information regarding the time spent by counsel on this case

10   and expenses incurred with his motion for attorneys' fees to be filed prior to the final approval

11   hearing. The chart below shows a summary of the hours worked. Based on a lodestar analysis as of

12   June 9, 2023, an award of up to 33 1/3 % would result in a multiplier of 2.73, which is lower than

13   other awards this Court has approved. *See, e.g.*, *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-

14   EMC, 2019 WL 1170487, at *7 (N.D. Cal. Mar. 13, 2019) (Chen, J.) (awarding attorneys' fees of

15   $3MM, for a lodestar multiplier of 3.5).

| Attorneys/Paralegals | Current Rate | Hours | Value |
|---|---|---|---|
| Ard, Seth | $1,200 | 24.7 | $29,640.00 |
| Downs, Kevin | $600 | 507.6 | $304,560.00 |
| Kirkpatrick, Ryan | $1,000 | 54.7 | $54,700.00 |
| Santos, Vanessa | $350 | 51.4 | $17,990.00 |
| Sklaver, Steven | $1,300 | 155.3 | $201,890.00 |
| Stanley, Joanna | $400 | 6.5 | $2,600.00 |
| **Totals** | | **801.2** | **$611,380.00** |

24       In addition to attorney and paralegal time invested, Susman Godfrey has advanced a total

25   of $167,818.96 in un-reimbursed expenses as of June 9, 2023, including expert fees, in connection

26   with prosecuting this litigation. Susman Godfrey's current expenses are summarized in the chart

27   below, which Plaintiff will supplement in his motion for attorneys' fees and expenses.

28

| Expense Category | Cumulative Expenses |
|---|---|
| Photocopies/Reproduction/Messenger Services | $157.08 |
| Document Review Hardware/Hosting | $4,283.82 |
| Experts/Consultants | $146,122.50 |
| Filing/Service/Court Reporter Fees/Transcripts/Court Fees | $2,077.27 |
| Mediation | $11,640.00 |
| Research/Westlaw | $3,538.29 |

    *iv.*  *Agreements required to be identified under Rule 23(e)(3).*

   The final subfactor, Rule 23(e)(2)(C)(iv), takes into account "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(3) requires the "parties seeking approval" to "file a statement identifying any agreement made in connection with the proposal." There are no agreements beyond the Settlement Agreement. Rule 23(e)(2)(C) therefore supports approval.

    d)  *The Proposal Treats All Settlement Class Members Equitably*

   The final Rule 23(e)(2) factor requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This analysis focuses on "inequitable treatment of some class members vis-a-vis others" and can include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, 2018 Advisory Note, Paragraphs (C) and (D).

   Here, the proposed plan of allocation equitably treats class members by distributing damages on a *pro rata* basis using each Class Members' share of the total damages, with each class member receiving a minimum distribution of $100. *See* Sklaver Decl., Ex. 4. The releases are also equitable, as they treat all Class Members equally and do not affect the apportionment of damages.

   The proposal also warrants approval under the heightened scrutiny standard for pre-certification settlements. "The Ninth Circuit has instructed that district courts must be particularly vigilant for signs that counsel have allowed the self-interests of certain class members to infect negotiations." *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714, at *9

(N.D. Cal. Aug. 13, 2021) (quoting *In re Bluetooth*, 654 F.3d at 947)). "For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement 'improperly grant[s] preferential treatment to class representatives.'" *Id.* (quoting *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *8 (N.D. Cal. Nov. 21, 2018)). While the Settlement Agreement authorizes payment of a service award of up to $25,000 to Plaintiff, the Court will ultimately determine whether such an award, and the amount, is reasonable. *See id.* (granting preliminary approval and finding that a request for an incentive award did not constitute preferential treatment). As Plaintiff will further detail in his motion to be filed in support of the service award, Mr. Yearby—who is 92 years old— has devoted significant time to reviewing pleadings with the assistance of family members during the more than two years this litigation has lasted. Mr. Yearby also took the initiative to seek out counsel after discovering the potential overcharges, and he should be rewarded for his role in reaching an early settlement for the Class that compensates Class Members for 88% of the total alleged COI overcharges. Courts "often award service payments to class representatives in compensation for shouldering significant burdens during the litigation: retaining counsel, producing documents, responding to written discovery, and conferring with counsel." *Marolda v. Symantec Corp.*, No. 08-CV-05701 EMC, 2013 WL 12310821, at *5 (N.D. Cal. Apr. 5, 2013) (Chen, J.). The proposal otherwise distributes the settlement on a *pro rata* basis and does not grant preferential treatment to the class representative. Rule 23(e)(2)(D) therefore supports approval.

     e) *Ninth Circuit Factors Not Included in Rule 23(e)(2) Favor Approval*

  "The amendments to Rule 23 do not displace any factor previously announced by the Ninth Circuit, but instead focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Amador*, 2020 WL 5628938, at *4 (cleaned up). Many of the non-Rule 23(e)(2) factors have been discussed as part of Rule 23(e)(2)—like the strength of the plaintiff's case; the risk and duration of further litigation; the risk of maintaining class action status; the amount offered in settlement; the extent of discovery completed and the stage of proceedings and the experience and views of counsel. The remaining non-Rule 23(e)(2) factors are irrelevant at this stage. There is no governmental participant, and

Class Members have not reacted to the Settlement because notice has not been issued. *Id.* at *4 (noting that "[o]ther factors not expressly included in Rule 23(e)(2) favor final approval").

### 3. The Proposed Class Likely Meets the Requirements for Settlement Class Certification

Rule 23(e)(1)(B)(ii) conditions preliminary approval and the direction of notice on a showing that the Court will likely be able to "certify the class for purposes of judgment on the proposal." However, the standard for certification for a settlement class is less stringent than for litigation purposes. *See* 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(1).

Even where a *higher* standard applies to *litigation* classes, courts in this District and across the country have certified litigation classes in COI breach-of-contract cases with facts very similar to these because the insurer engaged in class-wide conduct that allegedly breached form contracts written by the insurance company. *See, e.g., In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521, 533 (N.D. Cal. 2010) (certifying nationwide class of policyholders asserting breach-of-contract claims arising out of COI charges on form contracts); *In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) ("The class members' contract claims rise and fall together. Their contracts with AXA are identical in all material respects, and Plaintiffs allege that AXA breached each contract through a single course of action with respect to every policy included in the class."); *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 382 (S.D.N.Y. 2019) (certifying nationwide class in COI overcharge case where "[t]he contract language at issue does not vary by individual class member and is not materially different across the eighteen policies").

#### a) *Numerosity*

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." 3,090 Policies fall under the proposed Settlement Class definition. Mills Decl. at ¶ 6. "Courts generally find that numerosity is satisfied if the class includes forty or more members." *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 457 (N.D. Cal. 2019). Joinder is therefore impracticable and Rule 23(a)(1) is satisfied.

#### b) *Commonality*

1    Commonality is satisfied where, as here, a classwide proceeding may "generate common

2    answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

3    350 (2011). "Even a single common question will suffice to satisfy Rule 23(a)." *James v. Uber*

4    *Techs. Inc.*, 338 F.R.D. 123, 131 (N.D. Cal. 2021) (Chen, J.) (citing *Walmart*, 564 U.S. at 359)

5    (cleaned up).

6    This case presents numerous common questions of both law and fact that can be resolved

7    on a classwide basis.  This case involves form contracts, all of which contain substantially similar

8    provisions dictating how COI rates will be determined. The questions of what that language means,

9    and whether COI charges were properly based on expectations as to future mortality experience,

10   are all common questions with common answers for the entire class.  *See Hanks v. Lincoln Life &*

11   *Annuity Co. of N.Y.*, 330 F.R.D. 374, 382 (S.D.N.Y. 2019) ("Voya COI") (commonality satisfied

12   where "claims of the proposed class turn on common contentions of what factors VOYA or Lincoln

13   Life used to calculate the 2016 COI rate increase and whether the insurance contracts allow for a

14   rate increase based on those factors"); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at

15   *6 (C.D. Cal. Dec. 11, 2017) ("Given that courts have recognized that the law relating to the

16   elements of a claim for breach of contract do not vary greatly from state to state, the issue of breach

17   . . . is also common to all prospective class members."); *In re Conseco*, 270 F.R.D. at 529

18   ("[S]everal courts have recognized that the law relating to the element of breach does not vary

19   greatly from state to state.").

20         c)    *Typicality*

21   Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be]

22   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Representative claims are

23   typical if they are reasonably co-extensive with those of absent class members; they need not be

24   substantially identical." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 132 (N.D. Cal. 2021) (Chen,

25   J.) (internal quotation removed).  Typicality is "satisfied when each class member's claim arises

26   from the same course of events, and each class member makes similar legal arguments to prove the

27   defendant's liability." *Taylor*, 2015 WL 12658458, at *4 (citation omitted).

28

1    Here, typicality is satisfied because Plaintiff is a member of the Settlement Class and

2  possesses the same interests and suffered the same alleged injury as each Settlement Class Member

3  through ANICO's uniform course of conduct. Plaintiff, like all Settlement Class Members, was

4  subjected to the COI charges in alleged violation of his policy's terms and shares a common interest

5  in holding ANICO liable for these overcharges. *See, e.g., Phoenix COI*, 2013 WL 12224042, at *11

6  (S.D.N.Y. July 12, 2013) ("[T]he claim of the named plaintiff (Fleisher) is also typical, in that all

7  members of the class were allegedly subjected to a COI increase in violation of the terms of their

8  policies."). Thus, typicality is satisfied.

9               d)    *Adequacy*

10    Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the

11  interests of the class," and Rule 23(g)(4) requires that "class counsel [will] fairly and adequately

12  represent the interests of the class."  A named plaintiff satisfies the adequacy test if the individual

13  has no conflicts of interest with other class members and if the named plaintiff will prosecute the

14  action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985

15  (9th Cir. 2011).  "As other courts and commentators have noted, the typicality and adequacy

16  inquiries tend to significantly overlap." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 133 (N.D. Cal.

17  2021).

18    Here, Plaintiff and the Settlement Class share the same legal claims under the same set of

19  core facts. Plaintiff's interests are directly aligned with Settlement Class Members—to maximize

20  the amount recovered from ANICO for its alleged breach of contract. Proceeds will be distributed

21  equitably on a *pro rata* basis with every Class Member receiving at least $100, and all Settlement

22  Class Members share an overriding interest in obtaining the largest monetary recovery possible

23  from ANICO. For these reasons, Plaintiff's claim is typical and adequate for the Settlement Class,

24  and he should be appointed as representative of the Settlement Class. Susman Godfrey has

25  vigorously prosecuted this case on behalf of the Class for over two years. Moreover, the lawyers at

26  Susman Godfrey are experienced attorneys with qualifications and resources to administer this

27  settlement, and they have been found adequate class counsel in *Phoenix COI*, *Hancock COI*,

28

*Reliastar COI*, *North American COI*, *Voya COI*, *AXA COI*, *SLD COI*, and numerous other cases.[9] Thus, the Court should find that Susman Godfrey satisfies Rule 23(g).

e)    *The Settlement Class Meets the Requirements of Rule 23(b)(3)*

Certification of a class for settlement purposes requires a showing that "questions of law or fact predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Manageability is not at issue for a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Because Plaintiff's claims involve breach of standardized COI provisions in integrated, form contracts, as discussed above, common factual issues predominate. *See, e.g.*, *Fleisher*, 2013 WL 12224042, at *13 ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that . . . contain the same or essentially the same terms." (collecting cases)); *Transamerica COI*, 2017 WL 6496803, at *13 (certifying nationwide COI breach-of-contract case because "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct").

Additionally, although not required under Ninth Circuit precedent, *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016), damages can be measured classwide. Plaintiff's damages expert Robert Mills has calculated the amount of damages for each Class policy through February 28, 2023 using ANICO's data. Mills Decl. ¶¶ 10–12, Ex. 2. The amount ANICO overcharged Class members through inflated COI charges is "the most reasonable basis for measuring the harm that was incurred during the life of the policyholders." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 770 (8th Cir. 2020).

Finally, as numerous other courts have found in actions regarding the lawfulness of alleged COI damages, class adjudication is far superior to individual litigation here in light of the costs to litigate COI claims individually. *See, e.g., Fleisher*, 2013 WL 12224042, at *15–18. Settlement permits Settlement Class Members to obtain substantive relief despite there being no individual actions filed against ANICO concerning its COI charges. And, if any Settlement Class Member

---

[9] Sklaver Decl., Ex. 1 (Susman Godfrey Firm Resume).

wishes to pursue an individual action, they can opt out. Concentrating Settlement Class Members in this forum is desirable because there are 3,090 policies affected. Rule 23(b)(3) is therefore satisfied.

### B.    The Proposed Form and Manner of Notice is Appropriate

Rule 23(e)(1)(B) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal." "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores*, 396 F.3d at 113.

*First*, Plaintiff's two forms of notice—the short-form and long-form notices attached as Exhibits A and B to the Bowden Declaration—apprise Class Members, in plain English, of the general terms of the settlement, the plan of distribution, the allocation of attorneys' fees, and specific information about the opt-out process and the final approval hearing. *See* Bowden Decl., Ex. A (Short-Form Notice); Ex. B (Long-Form Notice).

*Second*, Plaintiff proposes the appointment of JND as Settlement Administrator, who has extensive experience serving as administrator in large, complex class actions. *See* Bowden Decl. ¶¶ 4–9. Plaintiff received bids from three competing settlement administrators, using the same methods of notice and claims payment. Ultimately, Plaintiff selected JND due to a consideration of multiple factors, including JND's experience (including COI experience), competitive pricing, and JND's history of engagements with Susman Godfrey. *See* Sklaver Decl. ¶¶ 22–23. Plaintiff's counsel has worked with JND in many cases, including several other COI class actions during the past two years, and JND managed the class notice process in those cases with diligence and care. *Id.* ¶ 24. JND's history of engagements with Susman Godfrey during the past two years is detailed in the declaration of Gina Inrepido-Bowden. *See* Bowden Decl. ¶ 7.  JND has extensive experience administering class-action settlements and has implemented robust procedures for handling class member data, as detailed in the Bowden Declaration.  *See* Bowden Decl. ¶¶ 4–7 & n.1.

*Third*, direct mailing of the notice to Class Members via U.S. Mail is a particularly effective method because in-force policyholders are expected to maintain their current address with their policy administrator. *See, e.g.*, *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales*

*Pracs. Litig.*, No. 5:09-MD-02015-JF, 2011 WL 1877630, at *3 (N.D. Cal. May 17, 2011) (notice by direct mail was adequate). A website will also be maintained so that anyone can read about the settlement and easily find all documents pertinent to the Settlement. *See* Bowden Decl. ¶ 20–21. An automated toll-free number will also be available. *See* Bowden Decl. ¶ 22–23.

The Court should therefore approve the proposed form and manner of notice as described in paragraphs 16–21 of the Sklaver Declaration and paragraphs 10–25 and Exhibits A and B of the Bowden Declaration because it is the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## C.    Proposed Schedule for Notice, Objections, and Final Approval

Plaintiff proposes the following schedule under the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart, subject to the approval of the Court. This schedule provides due process for Class Members related to their rights concerning the Settlement.

| Event | Days from Preliminary Approval |
|---|---|
| Deadline for ANICO to provide Class Member addresses to JND | 14 days |
| Deadline for JND to send notice to Class Members | 30 days |
| Deadline for JND to file proof of mailing | 45 days |
| Deadline to file motion for award of attorneys' fees, expenses, and service awards | 60 days |
| Deadline to request exclusion from the Settlement Class or object to the Settlement | 75 days |
| Deadline to file motion for final approval | 90 days |
| Deadline to serve any reply brief in support of any motion | 103 days |
| Final Approval Hearing | 110 days |

## III.    CONCLUSION

Plaintiff respectfully requests that the Court (i) preliminarily approve the proposed Settlement, Plan of Allocation, and the form and manner of notice, and certify the proposed Class for settlement; (ii) direct notice to the Class under Rule 23(e)(1); and (iii) schedule a date and time for a hearing to consider final approval of the Settlement and related matters.

1

2   Dated:  June 26, 2023                          By:  /s/ Steven G. Sklaver
                                                        Steven G. Sklaver
3                                                       SUSMAN GODFREY L.L.P.
                                                        1900 Avenue of the Stars, 14th Floor
4                                                       Los Angeles, California 90067
                                                        Telephone: (310) 789-3100
5                                                       Facsimile: (310) 789-3150
                                                        ssklaver@susmangodfrey.com
6

7                                                       Seth Ard (*appearance pro hac vice*)
                                                        Ryan Kirkpatrick
8                                                       SUSMAN GODFREY L.L.P.
                                                        1301 Avenue of the Americas, 32nd Floor
9                                                       New York, New York 10019
                                                        Telephone: (212) 336-8330
10                                                      Facsimile: (212) 336-8340
                                                        sard@susmangodfrey.com
11                                                      rkirkpatrick@susmangodfrey.com

12
                                                        Kevin Downs
13                                                      SUSMAN GODFREY L.L.P.
                                                        1000 Louisiana Street, Suite 5100
14                                                      Houston, Texas 77002
                                                        Telephone: (713) 651-9366
15                                                      Facsimile: (713) 654-6666
                                                        kdowns@susmangodfrey.com
16                                                      *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28