Steven G. Sklaver (237612)
ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Seth Ard (*pro hac vice*)
sard@susmangodfrey.com
Ryan Kirkpatrick (243824)
rkirkpatrick@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Kevin Downs (331993)
kdowns@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOE S. YEARBY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN NATIONAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 3:20-cv-09222-EMC<br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: November 2, 2023<br>Time: 1:30 PM<br>Location: Courtroom 5, 17th Floor<br>Judge: Honorable Edward M. Chen |

1

## NOTICE OF MOTION AND MOTION

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on November 2, 2023, at 1:30 PM, in Courtroom 5 of the

4 United States District Court for the Northern District of California, Phillip Burton Federal Building

5 and United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable

6 Edward M. Chen presiding, Plaintiff Joe S. Yearby will and hereby does move the Court pursuant

7 to Federal Rule of Civil Procedure 23 for an order entering Final Judgment, certifying the proposed

8 Class for settlement, and granting final approval of the proposed class action settlement with

9 American National Insurance Company.

10      This motion is based upon this Notice of Motion and Motion, the supporting Memorandum

11 set forth below, the attached declarations and exhibits, the pleadings and records on file in this

12 action, and other such matters and arguments as the Court may consider at the hearing of this

13 motion.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **STATEMENT OF ISSUES**

Whether this Court should (1) certify the proposed Class for settlement; (2) grant final approval of the proposed class action settlement with American National Insurance Company; and (3) enter an order entering Final Judgment.

1

**TABLE OF CONTENTS**

2    I.     INTRODUCTION .................................................................................................. 1

3    II.    PROCEDURAL HISTORY ...................................................................................... 2

4         A.    The Litigation ................................................................................................... 2

5         B.    Settlement Negotiations, Preliminary Approval, and Class Notice ....................... 4

6    III.   SUMMARY OF SETTLEMENT AGREEMENT ................................................... 6

7         A.    The Settlement Class ......................................................................................... 6

8         B.    Consideration .................................................................................................... 6

9         C.    Release .............................................................................................................. 7

10       D.    Awards, Costs, and Fees .................................................................................... 7

11       E.    Distribution Plan ............................................................................................... 8

12   IV.   ARGUMENT ......................................................................................................... 9

13       A.    The Proposed Settlement Warrants Final Approval.............................................. 9

14            1.    Legal Standard ...................................................................................... 9

15            2.    The Proposed Settlement Satisfies Rule 23(e)(2) and the Ninth Circuit's Factors ................................................................................... 11

16

17                 a)    Plaintiff and Class Counsel Have Adequately Represented the Class .................................................... 11

18                 b)    The Parties Negotiated the Settlement Agreement at Arms' Length ............................................................ 12

19

20                 c)    The Relief Provided to the Settlement Class is Adequate ........... 12

21                 d)    The Proposal Treats All Settlement Class Members Equitably .................................................................. 16

22                 e)    Ninth Circuit Factors Not Included in Rule 23(e)(2) Favor Approval ............................................................. 17

23

24            3.    The Plan of Allocation Warrants Final Approval .................................... 17

               4.    The Notice Satisfied Rule 23 and Due Process........................................ 18

25       B.    Certification of the Settlement Class is Appropriate............................................. 19

26            1.    The Settlement Class Meets the Requirements of Rule 23(a).................... 19

27                 a)    Numerosity.................................................................. 19

28

b)       Commonality.................................................................... 19

c)       Typicality ........................................................................ 20

d)       Adequacy.......................................................................... 21

2.       The Settlement Class Meets the Requirements of Rule 23(b)(3).............. 21

V.       CONCLUSION ............................................................................................. 22

1
# TABLE OF AUTHORITIES

2
**Page(s)**

3
**Cases**

4
*37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*,
  15-cv-9924 (PGG), Dkt. 164 (S.D.N.Y. Mar. 18, 2019) ............................................ 1, 14, 18

5

*Amchem Prods., Inc. v. Windsor*,
6   521 U.S. 591 (1997) ...................................................................................................... 21

7
*Betorina v. Randstad US, L.P.*,
  No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ................................ 14

8

*Briseno v. Henderson*,
9   998 F.3d 1014 (9th Cir. 2021) ...................................................................................... 10

10
*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................... 15, 17

11

*Churchill Village LLC v. Gen. Elec.*,
12   361 F.3d 566 (9th Cir. 2004) ....................................................................................... 15

13
*Cortez v. United Nat. Foods, Inc.*,
  No. 18-CV-04603-BLF, 2020 WL 13526688 (N.D. Cal. Feb. 6, 2020) .............................. 17

14

*Dyer v. Wells Fargo Bank, N.A.*,
15   303 F.R.D. 326 (N.D. Cal. 2014) ................................................................................. 14

16
*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................... 11, 20

17

*Feller v. Transamerica Life Ins. Co.*,
18   2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ............................................................. 19, 21

19
*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................................................................ *passim*

20

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
21   330 F.R.D. 374 (S.D.N.Y. 2019) .................................................................................. 19

22
*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
  2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ............................................................... 17

23

*In re Bluetooth Headset Prod. Liab. Litig.*,
24   654 F.3d 935 (9th Cir. 2011) ....................................................................................... 10

25
*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. 17-MD-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ............................. 18

26

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
27   270 F.R.D. 521 (N.D. Cal. 2010) ................................................................................. 19

28

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................. 13

*In re Lloyd's Am. Tr. Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................................ 17

*In re Mego Fin. Corp. Secs. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................. 14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................................................... 11

*In re Portal Software, Inc. Securities Litigation*,
  No. C–03–5138 VRW, 2007 WL 4171210 (N.D. Cal. Nov. 26, 2007) .................................. 14

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .......................................................................................... 13

*James v. Uber Techs. Inc.*,
  338 F.R.D. 123 (N.D. Cal. 2021) ...................................................................................... 19, 20

*Kastler v. Oh My Green, Inc.*,
  No. 19-CV-02411-HSG, 2021 WL 3604714 (N.D. Cal. Aug. 13, 2021) ......................... 14, 16

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .................................................................................................... 9

*Larsen v. Trader Joe's*,
  No. 11-cv-05188, 2014 WL 3404531 (N.D. Cal. July 21, 2014) ............................................ 15

*Meek v. Kansas City Life Insurance Co.*,
  No. 19-CV-472 (W.D. Mo.) ................................................................................................. 2, 13

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
  No. 19-CV-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ................................. 11

*Nightingale v. U.S. Citizenship & Immigr. Servs.*,
  333 F.R.D. 449 (N.D. Cal. 2019) ............................................................................................ 19

*Norem v. Lincoln Ben. Life. Co.*,
  737 F. 3d 1145 (7th Cir. 2013) ............................................................................................... 13

*O'Connor v. Uber Techs., Inc.*,
  2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ....................................................................... 18

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................................ 9, 12, 18

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) .......................................................................................... 10, 12

*Senne v. Kansas City Royals Baseball Corp.*,
  No. 14-CV-00608 JCS, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) ................................ 10

*Shin v. Plantronics, Inc.*,
  No. 18-CV-05626-NC, 2019 WL 2515827 (N.D. Cal. June 17, 2019) ................................ 16

*Slam Dunk I, LLC v. Connecticut General Life Ins. Co.*,
  853 F. App'x 451 (11th Cir. 2021) ................................................................................ 12, 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................................ 10

*Stuart v. Radioshack Corp.*,
  No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .................................... 12

*Taylor v. Midland Nat'l Life Ins.*,
  2019 WL 7500238 (S.D. Iowa May 3, 2019) .................................................................. 12, 20

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................................................. 9

*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ............................................................................................... 21

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................................................... 16

*Vogt v. State Farm Life Ins. Co.*,
  963 F.3d 753 (8th Cir. 2020) ................................................................................................. 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................... 11, 19

*Wilson v. Tesla, Inc.*,
  No. 17-CV-03763-JSC, 2019 WL 2929988 (N.D. Cal. July 8, 2019) .............................. 2, 15

**Statutes**

28 U.S.C. § 1715(b) ......................................................................................................... 5, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 12

Fed. R. Civ. P. 15(a)(1) ........................................................................................................... 3

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ........................................................................................................... 4

1   **I.      INTRODUCTION**

2          The Settlement[1] provides an exceptional result for the owners of the more than 3,000

3   policies in the Class. After accounting for the only two opt-outs, the cash fund is $4,993,565.62,

4   which considered alone represents ***an outstanding 88% of alleged overcharges*** that ANICO

5   collected from the Class Policies through February 28, 2023. The non-cash relief—a STOLI waiver

6   and ANICO's promise not to impose a higher COI rate scale on Class Policies for five years, even

7   in the face of a worldwide pandemic—delivers additional value to the Class worth hundreds of

8   thousands of dollars, which could not have been achieved even with a complete trial victory.

9          The Settlement is a superb result under any metric and from any perspective. The 88% of

10  overcharges returned to the Class by the Final Settlement Fund far exceeds what has been finally

11  approved in other COI cases, including one that a court described as "one of the most remunerative

12  settlements this court has ever been asked to approve," where the cash fund equated to 68.5% of

13  the historical overcharges. *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *10–11

14  (S.D.N.Y. Sept. 9, 2015) ("*Phoenix COI*"); *37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*,

15  15-cv-9924 (PGG), Dkt. 164 at 20:8–10 (S.D.N.Y. Mar. 18, 2019) ("*Hancock COI I*") (approving

16  "quite extraordinary" COI settlement providing for 42% of the alleged overcharges). Payment here

17  will be sent directly to class members, without any need to fill out claim forms, with no possible

18  reversion to ANICO.

19         In granting preliminary approval of the Settlement, this Court stated that "we'll have to see

20  what the class reaction is, but so far it looks good." Aug. 10, 2023 Tr., dkt. 94 at 10:19-21. The

21  class reaction has been overwhelmingly positive. ***Not a single Settlement Class Member objected,***

22  ***and there were only 2 opt outs out of thousands of class members.*** *See* Declaration of Gina

23  Intrepido-Bowden ("Intrepido-Bowden Decl.") ¶ 16; Declaration of Steven Sklaver ("Sklaver

24  Decl.") ¶ 23. Class Counsel achieved this Settlement after investing significant effort in this

25  litigation, obtaining and analyzing over 18,000 pages of documents in discovery (including

26  historical charge data and mortality expectations for all policies in the Class), working extensively

27  with liability and damages experts, and briefing case-dispositive motions. The arm's-length

28  _____

[1] All capitalized terms mean the same as in the Settlement Agreement, dkt. 82-2 at 25.

settlement negotiations were also extensive: the parties attended two separate mediation sessions each conducted by retired United States District Judge Vaughn Walker. Especially given the inherent uncertainty of COI litigation, as demonstrated in other cases, this result is excellent. The Class will get extensive cash and other benefits, while avoiding the substantial risks that Plaintiffs would face at trial, such as recovering nothing or far less than what Plaintiff seeks, which is precisely what happened to members of a certified class in a recent COI trial, where the jury returned a verdict of only 28 percent of the alleged COI overcharges, an amount the court later reduced to less than **6 percent**. *See, e.g.*, *Meek v. Kansas City Life Insurance Co.*, No. 19-CV-472 (W.D. Mo.).[2]

A highly effective notice program was adapted here, for which JND mailed 3,090 notices to potential Settlement Class Members, with direct mail reaching 97% of potential Settlement Class Member addresses. Intrepido-Bowden Decl. ¶¶ 3–5. The complete absence of objections and the extraordinarily low opt-out rate indicates the Settlement Class's strong support, and creates a "strong presumption" for approval. *Wilson v. Tesla, Inc.*, No. 17-CV-03763-JSC, 2019 WL 2929988, at *9 (N.D. Cal. July 8, 2019). When the Settlement's guaranteed benefits are viewed in light of the litigation risks, the Court should grant final approval to the Settlement and Plan of Allocation as fair, reasonable, and adequate.

## II.    PROCEDURAL HISTORY

### A.    The Litigation

The proposed Settlement Class consists of owners of over 3,000 universal life insurance policies ("Class Policies"), issued by ANICO in California.[3] Universal life policies combine death benefits with a savings or investment component. A key feature of such policies is that the monthly

---

[2] *See* Dkt. 82-2 at 168 (*Meek* Tr. at 69:9-16); Dkt. 82-2 at 80 (*Meek* verdict form); Dkt. 82-2 at 84 (*Meek* Dkt. 329, post-verdict Order).

[3] Specifically, the Class is "[a]ll owners of universal life (including variable universal life) insurance Policies issued in California by American National Insurance Company, or its predecessors in interest, that provide that cost of insurance rates are determined based on expectations as to future mortality experience, and that were subjected to monthly cost of insurance deductions on or after January 1, 2010," with the exclusion of "Class Counsel and their employees; American National; officers and directors of American National, and members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court, the Court's staff, and their immediate families." *See* Settlement Agreement § 5.

deductions are broken down into an array of discrete charges and credits, including the COI charge. Each Class Policy contains a section titled "Cost of Insurance Rate" with requirements governing how COI rates will be determined by ANICO based on its expectations as to future mortality experience. Plaintiff's policy, which is representative of the language included in all Class Policies, states in relevant part:

> The monthly Cost of Insurance rate is based on the sex, attained age, and rating class of the person insured. Attained age means the Insured's age last birthday on the previous Policy anniversary. Monthly Cost of Insurance Rates will be determined by the Company from time to time based on the Company's expectations as to future mortality experience.

Dkt. 82-2 at 67.

Plaintiff Joe S. Yearby owns an ANICO policy issued in California with this provision. Dkt. 82-2 at 47. In December 2020, Plaintiff filed a class action lawsuit against ANICO. Dkt. 1. The Complaint included one claim for breach of contract, alleging that ANICO breached the Policies by determining and deducting COI charges calculated using COI rates that were not based on ANICO's revised, improved, annual expectations as to future mortality experience. Dkt. 1 at 14.

ANICO moved to transfer venue to the Southern District of Texas and to dismiss based on lack of personal jurisdiction, res judicata, and failure to state a claim. Dkt. 25-28. Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff filed a First Amended Complaint ("FAC") on April 23, 2021. Dkt 31. ANICO moved to dismiss the FAC on similar grounds as the original complaint, and also filed its renewed motion to transfer the action. Dkts. 43–44. Plaintiff opposed the motions, Dkts. 46–47, and conducted jurisdictional discovery. Sklaver Decl. ¶ 6. After hearing oral argument, the Court denied the motion to transfer and granted in part and denied in part the motion to dismiss, allowing Plaintiff to amend his tolling allegation. Dkt. 57. Plaintiff did so by filing a Second Amended Complaint ("SAC"). Dkt. 61. ANICO did not move to dismiss the SAC, and instead served its Answer. Dkt. 69.

After an unsuccessful first in-person mediation on February 16, 2022, which was conducted at the suggestion of the Court, *see* Dkt. 41 at 2 (setting ADR deadline and limiting discovery until after the completion of ADR), the parties engaged in fact discovery, which included the service of

41 Requests for Production of documents, extensive negotiation over the scope of production and ESI protocol, and production and review of over 18,000 pages of documents and data sets, including documents produced pursuant to third-party subpoenas served on ANICO's independent auditors, Deloitte & Touche LLP and KPMG LLP. *See* Sklaver Decl. ¶ 7. Plaintiff also served a Rule 30(b)(6) deposition notice on ANICO and, following ANICO's objections to the notice, engaged in meet and confer efforts over the scope of the topics shortly before the parties reached an agreement on settlement. *Id*.

### B. Settlement Negotiations, Preliminary Approval, and Class Notice

The Settlement is the result of extensive, arms-length negotiations between the parties with the assistance of an experienced mediator, Vaughn R. Walker, a retired United States District Judge. *See* Sklaver Decl. ¶ 8; Dkt. 82-5 at 3–4. Through the life of the case, the parties exchanged numerous settlement offers and counter-offers and engaged in an unsuccessful mediation on February 16, 2022, in person in San Francisco. *See* Sklaver Decl. ¶ 9. Following extensive document and third-party discovery, the parties renewed mediation discussions in September 2022 and on November 22, 2022, the parties attended another mediation which resulted in agreement for a final settlement. Dkt. 82-5 at 3. The parties then informed the Court of the development. Dkt. 76. A long-form settlement agreement was heavily negotiated and agreed to thereafter. Dkt. 82-2 at 25.

Throughout the process, the settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. *See* Sklaver Decl. ¶ 10; Dkt. 82-5 ¶ 8. Class Counsel was well informed of material facts and the negotiations were hard-fought and non-collusive. *See* Dkt. 82-5 ¶¶ 7–9. Class Counsel analyzed all of the contested legal and factual issues to thoroughly evaluate ANICO's contentions, advocated in the settlement negotiation process for a settlement that serves the best interests of the Class, and demonstrated a willingness to continue to litigate rather than accept a settlement that was not in the best interest of their clients. *See id.*

On June 26, 2023, Plaintiff moved for preliminary approval of the Settlement. Dkt. 82. The Court found that the "compensation in this case of $5 million with no reverter . . . represents a substantial portion of historic damages." Dkt. 94 at 4:6–8. Following the hearing, the Court granted preliminary approval on August 11, 2023, finding that "it likely will be able to approve the proposed

1   Settlement as fair, reasonable, and adequate," that "the Agreement was entered into at arm's length

2   by highly experienced counsel," and that the case "was thoroughly litigated by experienced

3   counsel." Dkt. 89 at 2–3.

4          Following preliminary approval, JND disseminated notice to the Settlement Class

5   consistent with the preliminary approval order. JND mailed 3,090 notices to potential Settlement

6   Class Members using addresses ANICO provided. Intrepido-Bowden Decl. ¶ 3. JND also sent

7   notices by email to the 336 potential Class Members for whom ANICO maintained email addresses

8   on file. *Id.* ¶ 6. Of the notices mailed and emailed, only 93 mailed notices, and five emailed notices,

9   were returned as undeliverable. JND conducted additional research to forward or re-send notices to

10  updated addresses for any notices that were returned as undeliverable. Through these methods,

11  direct mailing reached an outstanding 97% of potential Settlement Class Member addresses. *Id.* ¶

12  5. JND also created a Settlement Website, posted the Settlement Agreement and other key filings

13  on the Website, and launched a toll-free number for Settlement Class Members to obtain

14  information by phone. *Id.* ¶¶ 8–11.

15         On July 5, 2023, ANICO mailed notices pursuant to the Class Action Fairness Act

16  ("CAFA") to the United States Attorney General and appropriate state officials required by 28

17  U.S.C. § 1715(b). Sklaver Decl. ¶ 12. There have been no objections to the Settlement from any

18  recipient. *Id.*

19         Class Counsel moved for attorneys' fees, reimbursement of litigation expenses, and a

20  service award ("Fee Motion") on August 25, 2023. Dkt. 90. Class Counsel sought $1.25 million in

21  attorneys' fees, equaling 23.3% of the Settlement's total benefits. Class Counsel also sought

22  reimbursement of incurred litigation expenses and a $25,000 service award for Plaintiff. *Id.* at 13–

23  14.

24         Settlement Class Members had until October 10, 2023 to opt out or object to any aspect of

25  the Settlement or Fee Motion. Dkt. 89 at 7. Not a single Settlement Class Member has filed an

26  objection to the Settlement or Fee Motion (either before or after the deadline), and JND has received

27

28

1   only two opt-out requests. Intrepido-Bowden Decl. ¶¶ 13, 16; Sklaver Decl. ¶ 14. After accounting

2   for the opt-out policies, the Final Settlement Fund is $4,993,565.62.[4] Sklaver Decl. ¶ 14.

3   **III.     SUMMARY OF SETTLEMENT AGREEMENT**

4       **A.     The Settlement Class**

5       The Settlement Agreement provides for a Settlement Class of "[a]ll owners of universal life

6   (including variable universal life) insurance Policies issued in California by American National

7   Insurance Company, or its predecessors in interest, that provide that cost of insurance rates are

8   determined based on expectations as to future mortality experience, and that were subjected to

9   monthly cost of insurance deductions on or after January 1, 2010,"[5] with the exclusion of the

10  policies that timely and validly opt out during the Rule 23(e)(4) opt-out period (referred to as the

11  "Opt-Outs" in the Settlement Agreement). *See* Dkt. 82-2 at 28, 31, Settlement Agreement §§ 5, 29.[6]

12  The awards and releases in the Settlement Agreement apply only to the Settlement Class.

13      **B.     Consideration**

14      The Settlement awards both cash relief and non-cash relief to the Settlement Class. With

15  respect to the cash relief, a $4,993,565.62 Final Settlement Fund will be funded for the benefit of

16  the Settlement Class. *See* Settlement Agreement §§ 19, 38, 43, 44. No portion of the Final

17  Settlement Fund will revert back to ANICO. *See id.* §§ 39, 44.

18      The Settlement Agreement also provides two forms of significant non-cash relief. *First*, for

19  a period of five years after the date on which the Court approves the settlement, "American National

---

[4] Reduction of the Settlement Fund for opt outs is calculated according to section 44 of the Settlement Agreement. The Settlement Fund is reduced, on a *pro-rata* basis measured by the face amount for each policy that timely and validly opts out during the Rule 23(e)(4) opt-out period. *See* Settlement Agreement § 44. For example, "if 1% of the total face amount of the in-scope policies owned by members of the Class is attributable to Opt-Outs, the Settlement Fund will be reduced by 1% (i.e., to $4,950,000)." *See id.* The total face amount of the policies that timely opted out amounted to ~0.1287% of the total face amount of the in-scope policies, resulting in a Settlement Fund reduction of only $6,434.38. Sklaver Decl. ¶ 14.
[5] The parties agree that the definition in the Settlement Agreement refers to the fact that the products at issue do not *expressly* list any other factor besides "expectations of future mortality experience" in the specific sentence that states that monthly COI rates "will be determined by" ANICO from "time to time." *See* Dkt. 84 at 2–3.
[6] In addition, the Settlement Class will exclude Class Counsel and their employees; ANICO; officers and directors of ANICO, and members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court, the Court's staff, and their immediate families. *See* Settlement Agreement § 5.

agrees that Current COI Rate Scales for the Class Policies will not be increased." *See* Settlement Agreement § 48. *Second*, "American National agrees to not take any legal action (including asserting as an affirmative defense or counter-claim), or cause to take any legal action, that seeks to void, rescind, cancel, have declared void, or seeks to deny coverage under or deny a death claim for any Class Policy based on:  (1) an alleged lack of valid insurable interest under any applicable law or equitable principles; or (2) any misrepresentation allegedly made on the application for, or otherwise made in applying for the policy" *Id.* § 49. As set forth in the June 26, 2023 Declaration of Keith McNally, an expert with extensive experience in the life insurance industry and with longevity-based products, the value of the nonmonetary relief made available to potential Class Members is $362,289. Dkt. 82-3 ¶ 11.

### C.    Release

The Settlement Class and certain related parties (referred to as the "Releasing Parties" in the Settlement Agreement) will release ANICO, certain related parties (referred to as the "Released Parties" in the Settlement Agreement) from "all Claims, from whatever jurisdiction, arising out of or related to any Policy, or Policies, that were alleged or could have been alleged in the Action arising out of the same Factual Predicate as that alleged in the Action and/or as clarified herein." Settlement Agreement §§ 30–32, 66. Expressly excluded from this release are claims arising from (i) future COI rate scale increases (after the 5-year COI rate freeze expires), (ii) other future increases to policy charges or credits that could not have been asserted in this action, or (iii) any failure to pay any death benefits that may be owed. *Id.* §§ 15, 72.

### D.    Awards, Costs, and Fees

The Settlement provides, subject to Court approval, for a service award of up to $25,000 for Plaintiff Joe Yearby for his services on behalf of the Settlement Class. *See* Settlement Agreement §§ 21, 59. The Settlement Agreement also provides notice that Class Counsel will move the Court for approval for attorneys' fees in an amount not to exceed 33 1/3% of the gross benefits provided to the Settlement Class and reimbursement for all expenses incurred or to be incurred. *See id.* §§ 60–61. The amounts as approved by the Court will be paid out of the Final Settlement Fund. *See id.* §§ 19, 21, 47, 60–61.

1    Class Counsel filed its Fee Motion on August 25, 2023, seeking $1.25 million in attorneys'

2    fees, which is 23.3% of the Settlement's overall benefits (and below the Ninth Circuit's 25%

3    benchmark), incurred litigation expenses, and a $25,000 service award for Mr. Yearby. Dkt. 90.

4    Settlement Class Members had the opportunity to object to the Fee Motion, and no objections have

5    been filed. Intrepido-Bowden Decl. ¶ 16; Sklaver Decl. ¶ 14.

6        **E.    Distribution Plan**

7        The Court has already preliminarily approved the Plan of Allocation, dkt. 89 at 3, which

8    distributes proceeds directly to Class Members on a *pro rata* basis without the need for a claim

9    form, dkt. 82-2 at 77. This ensures that proceeds will be distributed equitably and that as many

10   claimants as possible will receive a distribution. Each Class Member's *pro rata* share shall be that

11   Class Member's share of the total damages, with each Class Member receiving a minimum

12   distribution of $100. *See id*. Those damages will be determined in accordance with the methodology

13   set out in the June 22, 2023 Declaration of Robert Mills, dkt. 82-6, which determines the COI

14   Overcharge for a Policy as the difference between the COI charges actually assessed on the Policy

15   from January 1, 2010 to February 28, 2023, and the COI charges that would have been deducted

16   from the policy accounts under Plaintiff's theory of liability. Dkt. 82-2 at 78. All in-force policies

17   will also benefit from the guarantee of policy validity and the five-year COI freeze.

18       Class members will not need to fill out claim forms. Money will be sent to them

19   automatically in the mail, using the addresses that ANICO maintains on file. Proceeds will be

20   mailed within 30 days after the Final Settlement Date. Dkt. 82-2 at 77.[7] Within one year plus 30

21   days after the date the Settlement Administrator mails the proceeds, to the extent feasible and

22   practical in light of the costs of administering such subsequent payments, any funds remaining in

23   the Settlement Fund shall be re-distributed on a *pro rata* basis to Class Members who previously

24   cashed their checks. *Id.*

25

26   ───────────────────
     [7] The Settlement Agreement defines the Final Settlement Date as "the latest of: (i) the date of final

27   affirmance on any appeal of the Order and Judgment; (ii) the date of final dismissal with prejudice
     of the last pending appeal from the Order and Judgment; or (iii) if no appeal is filed, the expiration

28   of the time for filing or noticing any form of valid appeal from the Order and Judgment." *See*
     Settlement Agreement § 18.

1   The notice papers distributed to the Settlement Class included a description of the Plan of

2   Allocation, and JND also included a copy of the Plan on the Settlement Website.  There have been

3   no objections to any aspect of the Plan of Allocation. Intrepido-Bowden Decl. ¶ 16.

4   **IV.    ARGUMENT**

5          **A.    The Proposed Settlement Warrants Final Approval**

6                  **1.    Legal Standard**

7          In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of

8   dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San*

9   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "This is especially true in complex class action

10  litigation," *id.*, where "[t]his circuit has long deferred to the private consensual decision of the

11  parties." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). This is to advance the

12  "overriding public interest in settling and quieting litigation. . . . particularly . . . class action suits[.]"

13  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

14         Rule 23(e) governs how courts should evaluate class action settlements for approval.

15  "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a

16  district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair,

17  adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)

18  (citation omitted).

19         Under Rule 23(e)(2), courts may approve a settlement as "fair, reasonable, and adequate"

20  after considering whether:

21         (A) the class representatives and class counsel have adequately represented the
            class;
22
            (B) the proposal was negotiated at arm's length;
23
            (C) the relief provided for the class is adequate, taking into account: (i) the costs,
24          risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of
            distributing relief to the class, including the method of processing class-member
25          claims; (iii) the terms of any proposed award of attorney's fees, including timing of
            payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
26
            (D) the proposal treats class members equitably relative to each other.
27
    Fed. R. Civ. P. 23(e)(2).
28

1    Courts may also consider additional factors: (1) the strength of the plaintiffs' case; (2) the
2    risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class
3    action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
4    completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the
5    presence of a governmental participant; and (8) the reaction of the class members to the proposed
6    settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

7    Class settlements reached prior to formal class certification require a "heightened fairness
8    inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). "This more
9    exacting review is warranted to ensure that class representatives and their counsel do not secure a
10   disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to
11   represent." *Id.* The Court must "determine whether the settlement was the result of good faith, arms-
12   length negotiations or fraud and collusion." *Senne v. Kansas City Royals Baseball Corp.*, No. 14-
13   CV-00608 JCS, 2023 WL 2699972, at *8 (N.D. Cal. Mar. 29, 2023) (citing *Briseno v. Henderson*,
14   998 F.3d 1014, 1025 (9th Cir. 2021)). "In determining whether the settlement is the result of
15   collusion, courts 'must be particularly vigilant not only for explicit collusion, but also for more
16   subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain
17   class members to infect the negotiations.'" *Id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*,
18   654 F.3d 935, 947 (9th Cir. 2011)). The Ninth Circuit has identified three such signs:

19           (1) when counsel receive a disproportionate distribution of the settlement, or when
20           the class receives no monetary distribution but class counsel are amply rewarded;

21           (2) when the parties negotiate a "clear sailing" arrangement providing for the
             payment of attorneys' fees separate and apart from class funds, which carries the
22           potential of enabling a defendant to pay class counsel excessive fees and costs in
             exchange for counsel accepting an unfair settlement on behalf of the class; and

23           (3) when the parties arrange for fees not awarded to revert to defendants rather than
             be added to the class fund.
24

25   *Id.* As discussed below, none of these three signs are present here, and the Settlement was
26   vigorously negotiated at arms' length with absolutely zero direct or indirect collusion.

27

28

**2.      The Proposed Settlement Satisfies Rule 23(e)(2) and the Ninth Circuit's Factors**

a)      *Plaintiff and Class Counsel Have Adequately Represented the Class*

To determine adequacy of representation, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (cleaned up). The Court, in granting preliminary approval, already found that the Settlement Agreement was entered into "by highly experienced counsel," and that the case "was thoroughly litigated by experienced counsel." *Id.* at 2–3. It should do so again for final approval.

Plaintiff shares the same interest as the Settlement Class in prosecuting this action to ensure the greatest possible recovery from ANICO. Plaintiff is part of the Settlement Class and suffered the same injuries as other Settlement Class Members: monetary losses associated with COI overcharges. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members) (citation and internal quotation marks omitted).

Class Counsel have also demonstrated that they are qualified, experienced, and able to conduct the litigation and supervise the Settlement. The result of Plaintiff's and Class Counsel's efforts is a recovery of 88% of the total alleged historical damages as of February 28, 2023, *plus* additional non-monetary relief valued at $362,289 that could not have been obtained at trial. Moreover, in considering final approval, the fact that class counsel are experienced and competent "is another indication that [Plaintiff] has adequately represented the class." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-CV-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, as the Court has acknowledged, counsel for both sides have thoroughly litigated this case over the course of two years, dkt. 89 at 3, and they both strongly favor Settlement approval. Rule 23(e)(2)(A) therefore supports approval.

1          b)      *The Parties Negotiated the Settlement Agreement at Arms' Length*

2          The Court has held that "the Agreement was entered into at arm's length by highly

3   experienced counsel," and that it "likely will be able to find that the Settlement is fair, reasonable,

4   and adequate under Rule 23(e)(2)." Dkt. 89 at 3. This settlement is the result of repeated and hard-

5   fought arms'-length negotiations among competent, experienced counsel and a mediator with

6   extensive experience in complex litigation, class actions, and insurance issues. *See* Sklaver Decl.

7   ¶¶ 8–10; Dkt. 82-5 at 3–4.

8          The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-collusive,

9   negotiated resolution," *Rodriguez*, 563 F.3d at 965, and none of the signs that courts consider when

10  evaluating pre-certification settlements for collusion are present here. The Ninth Circuit has

11  articulated that the relevant signs are "(1) when counsel receive a disproportionate distribution of

12  the settlement; (2) when the parties negotiate a clear sailing arrangement (i.e., an arrangement where

13  defendant will not object to a certain fee request by class counsel); and (3) when the parties create

14  a reverter that returns unclaimed [funds] to the defendant." *Roes*, 944 F.3d at 1049 (cleaned up).

15  Class Counsel will not receive a disproportionate distribution of the settlement. Class Counsel

16  moved for an award of attorneys' fees of $1.25 million, or 23.3% of the gross benefits provided to

17  the Settlement Class, which is less than the Ninth Circuit's 25% benchmark and other approved fee

18  awards. *See, e.g.*, *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D.

19  Cal. Aug. 9, 2010) (Chen, J.) (awarding class counsel one-third of the total settlement amount,

20  which was "well within the range of percentages which courts have upheld as reasonable in other

21  class action lawsuits"). Nor is there any agreement for ANICO not to object to Class Counsel's fee

22  request. Sklaver Decl. ¶ 13. And the settlement is a non-reversionary fund—any unclaimed amounts

23  will be re-distributed to class members who cashed the first round of checks. Dkt. 82-2 at 78. Rule

24  23(e)(2)(B) therefore supports approval.

25          c)      *The Relief Provided to the Settlement Class is Adequate*

26          Rule 23(e)(2)(C) requires that "the relief provided for the class is adequate, taking into

27  account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

28  method of distributing relief to the class, including the method of processing class-member claims;

1    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

2    agreement required to be identified under Rule 23(e)(3)."

3            *First*, taking this case through trial and appeal would have been extremely risky.

4    Policyowners have lost COI cases on the pleadings, at class certification, and summary judgment.

5    *See, e.g.*, *Slam Dunk I, LLC v. Connecticut General Life Ins. Co.*, 853 F. App'x 451 (11th Cir. 2021)

6    (affirming dismissal under Rule 12(b)(6)); *Taylor v. Midland Nat'l Life Ins.*, 2019 WL 7500238

7    (S.D. Iowa May 3, 2019) (denying class certification); *Norem v. Lincoln Ben. Life. Co.*, 737 F. 3d

8    1145 (7th Cir. 2013) (affirming summary judgment). And recently, in a COI class action that

9    proceeded to trial, the class lost 95% of their damages after the jury returned a verdict for less than

10   a third of the plaintiffs' damages model and the court granted the insurer's post-trial motions. *See*

11   *Meek v. Kansas City Life Ins. Co.*, No. 19-CV-472 (W.D. Mo.). These risks exist here too.

12           For example, whether or not consideration of other factors besides mortality is permissible

13   under the language of the policies at issue in this case is a contested issue that ANICO has raised,

14   citing *Slam Dunk*, 853 F. App'x. 451. Dkt. 39 at 27–28.  The policy language also states that

15   monthly COI rates "will be determined by" ANICO from "time to time," and the meaning of that

16   phrase had not yet been litigated.  Plaintiff contends that the clause would require ANICO to

17   redetermine COI rates at least annually when it updates its mortality expectations.  ANICO disputes

18   that construction, and resolution of that issue in ANICO's favor would substantially lower the

19   damages Plaintiff contends are recoverable. *See* Dkt. 84 at 2–3. ANICO argued that claim

20   preclusion barred Plaintiff's claims because he was a class member in a previously settled class

21   action lawsuit against ANICO (called the *Albanoski* Action) that supposedly raised the same claims.

22   *See* Dkt. 39 at 24. ANICO also raised a statute of limitations defense that, if successful, could have

23   eliminated most of the Class's damages, arguing that the clock began running when policyholders

24   allegedly received notice of the allegation that ANICO COI rates included non-mortality factors in

25   the prior case. Dkt. 49 at 10–11. And had the case proceeded to trial, liability and damages would

26   have likely come down to dueling expert opinions about actuarial standards, insurance principles,

27   technical actuarial assumptions, documents, and data. Such a "battle of the experts" would have

28   been a jury issue and is inherently unpredictable. *See In re Extreme Networks, Inc. Sec. Litig.*, No.

1    15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding that the plaintiff

2    faced "significant obstacles," including "the risks inherent in a 'battle of the experts' of complex

3    economic theories in a jury trial"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45

4    (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty

5    which testimony would be credited[.]"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

6        This Settlement also avoids the enormous costs and delays associated with pursuing a

7    judgment at trial. Given the complexities and expert witness issues described above, COI cases are

8    extraordinarily expensive to try. Dkt. 82-2 at 4. Even by settling this case before class certification,

9    Class Counsel still incurred over $182,000 in litigation expenses. Dkt. 90 at 13–14. There is a

10   serious risk that expenses would severely diminish the distributions that the class would ultimately

11   receive, if this case were to proceed to trial. And given the stage of this case, a jury verdict remains

12   at least a year away and would then face a long appellate process that would have significantly

13   delayed any substantive relief. *In re Portal Software, Inc. Securities Litigation*, No. C–03–5138

14   VRW, 2007 WL 4171210, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the "inherent risks of

15   proceeding to summary judgment, trial and appeal also support the settlement"). It would likely not

16   be until *after* any appeals that any Class Member could even hope to receive any damages for their

17   claim. This factor supports final approval because, "without a settlement, Plaintiffs would risk

18   recovering nothing after a lengthy and costly litigation." *Dyer v. Wells Fargo Bank, N.A.*, 303

19   F.R.D. 326, 331 (N.D. Cal. 2014).

20       Here, the Settlement provides nearly $5 million in cash benefits to the Settlement Class,

21   which is approximately 88% of the Settlement Class's alleged damages as of February 28, 2023

22   under Plaintiff's overcharge methodology. Dkt. 82-6 ¶ 12. This settlement cash-to-damages ratio

23   exceeds the amount obtained in *Phoenix COI*, which the Court called "one of the most remunerative

24   settlements this court has ever been asked to approve," *Phoenix COI,* 2015 WL 10847814, at **10-

25   11, as well as the 42% recovery obtained in *Hancock COI*.  It is well in excess of settlements that

26   have been approved in this Circuit. *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459

27   (9th Cir. 2000) (affirming approval of settlement worth "roughly one-sixth of the potential recovery,

28   which, given the difficulties in proving the case, is fair and adequate"); *Betorina v. Randstad US,*

1  *L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *8 (N.D. Cal. Apr. 6, 2017) (Chen, J.)

2  (approving settlement value that was "49% of the calculated damages estimated by Plaintiffs");

3  *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714, at *9–10 (N.D. Cal.

4  Aug. 13, 2021) (under the heightened scrutiny standard for pre-certification settlements, a

5  settlement amount representing only "a fraction of Defendant's potential statutory damages

6  exposure" was "within the range of possible approval" due to the case's complexities), *final

7  approval granted*, 2022 WL 1157491, at *6 (N.D. Cal. Apr. 19, 2022).[8]

8          There is no better endorsement for the Settlement than the Settlement Class's reaction—

9  which has been overwhelmingly positive. "Courts have repeatedly recognized that the absence of

10  a large number of objections to a proposed class action settlement raises a strong presumption that

11  the terms of the proposed class settlement action are favorable to the class members." *Wilson*, 2019

12  WL 2929988 at *9. Here, not only are there no objections, but also there are only two opt-out

13  requests, which strongly supports final approval. *See Churchill Village LLC v. Gen. Elec.*, 361 F.3d

14  566, 577 (9th Cir. 2004) (settlement approved with 45 objections from 90,000 notices); *Chun-Hoon

15  v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (noting that "zero objections

16  and sixteen opt-outs (comprising 4.86% of the class)" "strongly supports settlement"); *Larsen v.

17  Trader Joe's*, No. 11-cv-05188, 2014 WL 3404531, at *5 (N.D. Cal. July 21, 2014) (internal

18  quotations omitted) (23 opt-outs out of a total of 59,830 class members was a factor supporting

19  final settlement approval).

20          *Second*, the effectiveness of the proposed method of distributing relief to the class is

21  highlighted by the fact that Class Members do not have to fill out a claims form to receive payment.

22  Instead, checks will be distributed directly to the mailing addresses ANICO maintains on file for

23  policyholders. Sklaver Decl. ¶ 19. Indeed, through direct mailing alone, JND reached an

24  extraordinary 97% of the potential Class Members. Intrepido-Bowden Decl. ¶ 5.

---

25  [8] A detailed chart of comparable outcomes in COI class action settlements, based on the factors

26  listed in the Northern District of California's Procedural Guidance for Class Action Settlements, is
available at dkt. 82-2 at 175. The amount of damages potentially at issue in COI cases can depend
on the magnitude of the COI overcharges, the number of policies at issue, the face value of those

27  policies, and other factors. The ANICO policies at issue here involved relatively low face value
policies and a relatively small total COI overcharge, compared to other policies at issue in other

28  COI settlements. *See* Dkt. 84 at 5.

*Third*, the outstanding result of recovering 88% of historical damages—along with the unanimously positive reaction of the Class—supports the requested attorneys' fees. Class Counsel moved for an award of attorneys' fees of $1.25 million, which is 23.3% of the value of the overall gross benefits to the Class. Dkt. 90. No Settlement Class Member has objected to any portion of the Fee Motion. Sklaver Decl. ¶ 23. Attorneys' fee awards in this range are presumptively reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("[T]he 'benchmark' award is 25 percent of the recovery obtained, with 20–30% as the usual range." (cleaned up)).

*Fourth*, there are no agreements beyond the Settlement Agreement that require identification under Rule 23(e)(3).

> d)    *The Proposal Treats All Settlement Class Members Equitably*

The final Rule 23(e)(2) factor requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This analysis focuses on "inequitable treatment of some class members vis-a-vis others" and can include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, 2018 Advisory Note, Paragraphs (C) and (D).

Here, the proposed plan of allocation equitably treats class members by distributing damages on a *pro rata* basis using each Class Members' share of the total damages, with each class member receiving a minimum distribution of $100. Dkt. 82-2 at 78. The releases are also equitable, as they treat all Class Members equally.

The proposal also warrants approval under the heightened scrutiny standard for pre-certification settlements. While the Settlement Agreement authorizes, and Class Counsel has sought, payment of a service award of up to $25,000 to Plaintiff, the Court will ultimately determine whether such an award, and the amount, is reasonable. *See Kastler*, 2021 WL 3604714 at *9 (finding that a request for an incentive award did not constitute preferential treatment), *final approval granted*, 2022 WL 1157491 at *6. The proposal otherwise distributes the settlement on a *pro rata* basis and does not grant preferential treatment to the class representative.

1      e)      *Ninth Circuit Factors Not Included in Rule 23(e)(2) Favor Approval*

2           The amendments to Rule 23 do not "displace any factor previously announced by the Ninth

3      Circuit, but instead focus the court and the lawyers on the core concerns of procedure and substance

4      that should guide the decision whether to approve the proposal." *Shin v. Plantronics, Inc.*, No. 18-

5      CV-05626-NC, 2019 WL 2515827, at *4 (N.D. Cal. June 17, 2019) (cleaned up).  Many of the non-

6      Rule 23(e)(2) factors have been discussed as part of Rule 23(e)(2)—like the strength of the

7      plaintiff's case; the risk and duration of further litigation; the risk of maintaining class action status;

8      the amount offered in settlement; the extent of discovery completed and the stage of proceedings

9      and the experience and views of counsel.  While there was not enough information at preliminary

10     approval to evaluate the remaining non-Rule 23(e)(2) factors, they both now strongly support

11     approval.

12          First, ANICO served CAFA notices on the U.S. Attorney General and appropriate state

13     officials as required by 28 U.S.C. § 1715(b).  There has not been any indication of disapproval from

14     any government agency. Sklaver Decl. ¶ 12. Second, class members' reaction to the Settlement is

15     overwhelmingly positive. There have been no objections to any aspect of the Settlement, and there

16     have been just two opt outs—an extraordinary result. *See Chun-Hoon*, 716 F. Supp. 2d at 852.

17                    **3.      The Plan of Allocation Warrants Final Approval**

18          Plaintiff also seeks final approval of the Plan of Allocation, which apportions each

19     Settlement Class Member a *pro-rata* share of the Final Settlement Fund tied to the share of the total

20     damages, with each class member receiving a minimum distribution of $100. Dkt. 82-2 at 78. In

21     granting preliminary approval of the Settlement, the Court also "preliminarily approve[d] the . . .

22     Plan of Allocation described in Exhibit 4 to the Sklaver Declaration, because the Court likely will

23     be able to find that the Settlement is fair, reasonable, and adequate," dkt. 89 at 3, and it should do

24     so again for final approval. The same standards that govern settlement approval also govern

25     approval of an allocation plan. A plan that distributes funds on a *pro-rata* basis "need only have a

26     reasonable, rational basis, particularly if recommended by experienced and competent counsel" to

27     be approved. *See Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2020 WL 13526688,

28     at *8 (N.D. Cal. Feb. 6, 2020) (quoting *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,

1    2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014)). Courts in other COI cases have repeatedly

2    approved this same type of plan of allocation. *See e.g., Phoenix COI*, 2015 WL 10847814, at *12

3    ("This type of distribution, where funds are distributed on a *pro rata* basis, has frequently been

4    determined to be fair, adequate, and reasonable." (collecting cases)); *Hancock COI I*, 15-cv-9924

5    (PGG), Dkt. 161 at 4 (S.D.N.Y. Mar. 29, 2019) (granting final approval and finding *pro rata*

6    distribution plan "fair, reasonable, and adequate"). The same is true in non-COI cases, where courts

7    have repeatedly approved *pro rata* distributions. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, No. 13-

8    CV-03826-EMC, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019) (Chen, J.), *final approval*

9    *granted*, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019) (approving distribution plan as equitable

10   because it distributed funds on a *pro rata* basis); *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL

11   31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("[P]*ro rata* allocations provided in the Stipulation are

12   not only reasonable and rational, but appear to be the fairest method of allocating the settlement

13   benefits."). The Plan of Allocation accomplishes this goal, and the Court has already preliminarily

14   approved the Plan. Dkt. 89 at 3. Like the rest of the Settlement, there are no objections to the

15   proposed Plan.

16              **4.    The Notice Satisfied Rule 23 and Due Process**

17         The Class Notice satisfied Rule 23's requirements, which requires a "reasonable manner"

18   of giving notice "to all class members who would be bound" by the Settlement. Fed. R. Civ. P.

19   23(e)(1)(B). In accordance with the Court's preliminary approval Order, dkt. 89, JND mailed 3,090

20   copies of the Class Notice to potential Settlement Class Members, emailed notices to the 336

21   Settlement Class Members whose email addresses were available, and launched the class action

22   website (www.AnicoCOISettlement.com) and toll-free telephone number regarding the Settlement.

23   Intrepido-Bowden Decl. ¶¶ 3–9. Just through direct mailing, JND reached 97% of potential

24   Settlement Class Member addresses. *Id*. at ¶ 5.

25         The Class Notice provides all necessary information for Settlement Class Members to make

26   an informed decision on the Settlement—including information on the lawsuit's allegations, the

27   Settlement's relief, release, and Plan of Allocation, and the Settlement's provision for attorneys'

28   fees and expenses. Class Counsel's Fee Motion is available on the class action website, which is

listed in the Class Notice. The Class Notice thus "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Rodriguez*, 563 F.3d at 962 (citation omitted). This combination of information and outreach supports the conclusion that Class Notice was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### B.    Certification of the Settlement Class is Appropriate

Plaintiff respectfully requests that the Court certify the proposed Settlement Class in its final approval order. "When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b)." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019) (Chen, J.). However, the standard for certification for a settlement class is less stringent than for litigation purposes. *See* 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(1). In granting preliminary approval of the proposed Settlement, this Court found that it would "likely be able to certify the . . . Settlement Class for purposes of judgment on the proposed Settlement." Dkt. 89 at 2. The Court should do so again for final approval.

### 1.    The Settlement Class Meets the Requirements of Rule 23(a)

#### a)    *Numerosity*

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." Over 3,000 Policies fall under the proposed Settlement Class definition. Dkt. 82-6 ¶ 6. "Courts generally find that numerosity is satisfied if the class includes forty or more members." *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 457 (N.D. Cal. 2019). Joinder is therefore impracticable and Rule 23(a)(1) is satisfied.

#### b)    *Commonality*

Commonality is satisfied where, as here, a classwide proceeding may "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Even a single common question will suffice to satisfy Rule 23(a)." *James v. Uber*

1  *Techs. Inc.*, 338 F.R.D. 123, 131 (N.D. Cal. 2021) (Chen, J.) (citing *Walmart*, 564 U.S. at 359)

2  (cleaned up).

3  This case presents numerous common questions of both law and fact that can be resolved

4  on a classwide basis. This case involves form contracts, all of which contain substantially similar

5  provisions dictating how COI rates will be determined. The questions of what that language means,

6  and whether COI charges were properly based on expectations as to future mortality experience,

7  are all common questions with common answers for the entire class. *See Hanks v. Lincoln Life &*

8  *Annuity Co. of N.Y.*, 330 F.R.D. 374, 382 (S.D.N.Y. 2019) ("*Voya COI*") (commonality satisfied

9  where "claims of the proposed class turn on common contentions of what factors VOYA or Lincoln

10 Life used to calculate the 2016 COI rate increase and whether the insurance contracts allow for a

11 rate increase based on those factors"); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at

12 *6 (C.D. Cal. Dec. 11, 2017) ("Given that courts have recognized that the law relating to the

13 elements of a claim for breach of contract do not vary greatly from state to state, the issue of breach

14 . . . is also common to all prospective class members."); *In re Conseco Life Ins. Co. LifeTrend Ins.*

15 *Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) ("[S]everal courts have recognized that

16 the law relating to the element of breach does not vary greatly from state to state.").

17              c)       *Typicality*

18 Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be]

19 typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Representative claims are

20 typical if they are reasonably co-extensive with those of absent class members; they need not be

21 substantially identical." *James*, 338 F.R.D. at 132 (internal quotation removed). Typicality is

22 "satisfied when each class member's claim arises from the same course of events, and each class

23 member makes similar legal arguments to prove the defendant's liability." *Taylor*, 2015 WL

24 12658458, at *4 (citation omitted).

25 Here, typicality is satisfied because Plaintiff is a member of the Settlement Class and

26 possesses the same interests and suffered the same alleged injury as each Settlement Class Member

27 through ANICO's uniform course of conduct. Plaintiff, like all Settlement Class Members, was

28 subjected to the COI charges in alleged violation of his policy's terms and shares a common interest

1   in holding ANICO liable for these overcharges. *See, e.g., Phoenix COI*, 2013 WL 12224042, at *11

2   ("[T]he claim of the named plaintiff (Fleisher) is also typical, in that all members of the class were

3   allegedly subjected to a COI increase in violation of the terms of their policies."). Thus, typicality

4   is satisfied.

5                   d)      *Adequacy*

6           Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the

7   interests of the class," and Rule 23(g)(4) requires that "class counsel [will] fairly and adequately

8   represent the interests of the class." A named plaintiff satisfies the adequacy test if the individual

9   has no conflicts of interest with other class members and if the named plaintiff will prosecute the

10  action vigorously on behalf of the class. *See Ellis*, 657 F.3d at 985. "As other courts and

11  commentators have noted, the typicality and adequacy inquiries tend to significantly overlap."

12  *James*, 338 F.R.D. at 133.

13          In its order granting preliminary approval, the Court preliminarily found that "Plaintiff Joe

14  S. Yearby satisfies the requirements of Rule 23(e)(2)(A) and therefore appoints him to serve as

15  Settlement Class Representative," and "that Susman Godfrey L.L.P. satisfies the requirements of

16  Rule 23(e)(2)(A) and is appointed as Class Counsel pursuant to Rule 23(g)." Dkt. 89 at 3. In

17  addition to the superb result obtained for the Class, this finding further confirms Plaintiff's and

18  Class Counsel's adequacy.

19          **2.      The Settlement Class Meets the Requirements of Rule 23(b)(3)**

20          Certification of a class for settlement purposes requires a showing that "questions of law or

21  fact predominate over any questions affecting only individual members" and that "a class action is

22  superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

23  Civ. P. 23(b)(3). Manageability is not at issue for a settlement class. *Amchem Prods., Inc. v.*

24  *Windsor*, 521 U.S. 591, 615 (1997).

25          Because Plaintiff's claims involve breach of standardized COI provisions in integrated,

26  form contracts, as discussed above, common factual issues predominate. *See, e.g.*, *Phoenix COI*,

27  2013 WL 12224042, at *13 ("There is widespread agreement that certification under Rule 23(b)(3)

28  is warranted for claims that involve contracts that . . . contain the same or essentially the same

terms." (collecting cases)); *Transamerica COI*, 2017 WL 6496803, at *13 (certifying nationwide COI breach-of-contract case because "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct").

Additionally, although not required under Ninth Circuit precedent, *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016), damages can be measured classwide. Plaintiff's damages expert Robert Mills has calculated the amount of damages for each Class policy through February 28, 2023 using ANICO's data. Dkt. 82-6 ¶¶ 10–12. The amount ANICO overcharged Class members through inflated COI charges is "the most reasonable basis for measuring the harm that was incurred during the life of the policyholders." *Vogt v. State Farm Life Ins. Co*., 963 F.3d 753, 770 (8th Cir. 2020).

Finally, as numerous other courts have found in actions regarding the lawfulness of alleged COI damages, class adjudication is far superior to individual litigation here in light of the costs to litigate COI claims individually. *See, e.g., Phoenix COI*, 2013 WL 12224042, at *15–18. Settlement permits Settlement Class Members to obtain substantive relief despite there being no individual actions filed against ANICO concerning its COI charges. Concentrating Settlement Class Members in this forum is desirable because there are over 3,000 policies affected. Rule 23(b)(3) is therefore satisfied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant the Settlement final approval, certify the proposed Class for settlement, and enter the proposed order and final judgment in this case.

Dated:  October 13, 2023                   By:  /s/ *Steven G. Sklaver*
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ssklaver@susmangodfrey.com

1

2          Seth Ard (*pro hac vice*)
           Ryan Kirkpatrick
3          SUSMAN GODFREY L.L.P.
           1301 Avenue of the Americas, 32nd Floor
4          New York, New York 10019
           Telephone: (212) 336-8330
5          Facsimile: (212) 336-8340
           sard@susmangodfrey.com
6          rkirkpatrick@susmangodfrey.com

7
           Kevin Downs
8          SUSMAN GODFREY L.L.P.
           1000 Louisiana Street, Suite 5100
9          Houston, Texas 77002
           Telephone: (713) 651-9366
10         Facsimile: (713) 654-6666
           kdowns@susmangodfrey.com
11

12         *Attorneys for Plaintiff and the Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28